**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

CASE NO. 05-21646-CIV-SEITZ/MCALILEY

FILED BY ___ D.C.
05 JUL 27 PM 4:05
CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIA

WILLIAM SCHOENBAUM AND ELAYNE STERN individually, and on behalf of all others similarly situated,

Plaintiffs,

v.

THE PROCTER[1] & GAMBLE COMPANY,

Defendant.

_______________________________/

PROCTER & GAMBLE'S MEMORANDUM OF
LAW IN SUPPORT OF ITS MOTION TO DISMISS

STEARNS WEAVER MILLER
WEISSLER ALHADEFF & SITTERSON, P.A.
Jay B. Shapiro
Adam M. Schachter
Suite 2200 Museum Tower
150 West Flagler Street
Miami, Florida 33130
Telephone: 303-789-3200
Telecopier: 303-789-3395

FULBRIGHT & JAWORSKI LLP
Mark N. Mutterperl
Mark A. Robertson
Jenifer S. McIntosh
666 Fifth Avenue
New York, New York 10103-3198
Telephone: 212-318-3000
Telecopier: 212-318-3400

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Geoffrey Potter
Alison Sclater
Yehudis Lewis
1177 Avenue of the Americas
New York, New York 10036
Telephone: 212-715-9402
Telecopier: 212-715-8402

---

1 Plaintiffs misspelled "Procter" in the Complaint. P&G spells it correctly.

30959422.3



10

# TABLE OF CONTENTS

Page


TABLE OF AUTHORITIES ........ iii

INTRODUCTION AND SUMMARY OF ARGUMENT ........ 1

I. DISMISSAL SHOULD BE GRANTED WHEN THE COMPLAINT FAILS TO ALLEGE A CAUSE OF ACTION ........ 3

II. THE COMPLAINT FAILS TO STATE A VIOLATION OF 15 U.S.C. § 45 AND 15 U.S.C. § 52 BECAUSE NO PRIVATE CAUSE OF ACTION EXISTS ........ 3

III. BECAUSE NO DUTY EXISTS, THE COMPLAINT FAILS TO STATE A CLAIM OF NEGLIGENCE OR MEDICAL MONITORING ........ 4

IV. THE COMPLAINT FAILS TO ALLEGE A FRAUD CAUSE OF ACTION ........ 5

A. Because P&G did not have a duty to disclose anything about the counterfeiters, the fraud claim should be dismissed ........ 6

B. The failure to allege scienter requires dismissal ........ 7

V. BREACH OF IMPLIED WARRANTY CLAIM FAILS TO STATE A CLAIM ........ 8

A. This Court should dismiss the implied warranty cause of action (fifth cause of action) because P&G did not provide a warranty for counterfeit products ........ 8

B. Plaintiffs' failure to properly plead privity requires dismissal of their breach of warranty claim ........ 9

VI. PLAINTIFFS' RICO CLAIM FAILS AS A MATTER OF LAW ........ 9

A. Plaintiffs fail to allege a RICO predicate act ........ 10

(1) Because no duty exists to disclose counterfeiting, wire fraud does not exist ........ 10

(2) Because specific intent to defraud does not exist, wire fraud does not exist ........ 11

B. Plaintiffs fail to allege damage as a result of a racketeering violation ........ 12

C. Plaintiffs' RICO allegations fail for lack of particularity ........ 14

D. Plaintiffs failure to comply with Local Rule 12.1 requires dismissal ........ 14

VII. DISMISSAL SHOULD BE GRANTED ON PLAINTIFFS' FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT CLAIM ........ 15

A. Because the facts alleged do not constitute unfair or deceptive acts, the FDUTPA claim should be dismissed ........ 15

B. The FDUTPA does not cover personal injury causes of action ........ 16

C. Because P&G did not sell or manufacture counterfeit products, the FDUTPA claim should be dismissed ........ 17

**TABLE OF CONTENTS**
(continued)

**Page**

VIII. DISMISSAL OF ALL CLAIMS SHOULD BE GRANTED BECAUSE PLAINTIFFS FAIL TO ALLEGE PROXIMATE CAUSE ........ 17

IX. DISMISSAL OF ALL CLAIMS SHOULD BE GRANTED BECAUSE THE NAMED PLAINTIFFS LACK STANDING ........ 18

CONCLUSION ........ 20



STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
MUSEUM TOWER, 150 WEST FLAGLER STREET, MIAMI, FLORIDA 33130 • TELEPHONE (305) 789-3200

## TABLE OF AUTHORITIES

**Page**

**Cases**

*A. Terzi Prods., Inc. v. Theatrical Protective Union*, 2 F. Supp. 2d 485 (S.D.N.Y. 1998) ..... 14

*Affiliates for Evaluation and Therapy, Inc. v. Viasyn Corp.*, 500 So. 2d 688 (Fla. 3d DCA 1987) ..... 9

*Anderson v. Smithfield Foods, Inc.*, 207 F. Supp. 2d 1358 (M.D. Fla. 2002) ..... 17, 18

*Angus v. Shiley Inc.*, 989 F.2d 142 (3d Cir. 1993) ..... 19

*Avirgan v. Hull*, 932 F.2d 1572 (11th Cir. 1991) ..... 12

*Banco de Sarrollo Agropecuario v. Gibbs*, 640 F. Supp. 1168 (S.D. Fla. 1986) ..... 12

*Banco Latino Int'l v. Lopez*, 95 F. Supp. 2d 1327 (S.D. Fla. 2000) ..... 6, 7, 9, 11

*Barnes v. Burger King Corp.*, 932 F. Supp. 1420 (S.D. Fla. 1996) ..... 6

*Betts v. Advance Am.*, 213 F.R.D. 466 (M.D. Fla. 2003) ..... 15, 16

*Bonner v. Prichard*, 661 F.2d 1206 (11th Cir. 1981) ..... 3

*Briehl v. Gen. Motors Corp.*, 172 F.3d 623 (8th Cir. 1999) ..... 19

*Brooks v. Bank of Boulder*, 891 F. Supp. 1469 (D. Colo. 1995) ..... 12

*Brooks v. Blue Cross and Blue Shield of Florida*, 116 F.3d 1364 (11th Cir. 1997) ..... 13, 14

*Bruner v. Anheuser-Busch, Inc.*, 153 F. Supp. 2d 1358 (S.D. Fla. 2001) ..... 17

*Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164, 114 S. Ct. 1439, 128 L. Ed. 2d 119 (1994) ..... 5, 6

*Chiarella v. United States*, 445 U.S. 222, 100 S. Ct. 1108, 63 L. Ed. 2d 348 (1980) ..... 6, 10

*Connecticut Nat'l Bank v. Fluor Corp.*, 808 F.2d 957 (2d Cir. 1987) ..... 7

*Danielsen v. Burnside-Ott Aviation Training Ctr., Inc.*, 941 F.2d 1220 (D.C. Cir. 1991) ..... 13

*Eidson v. Arenas*, 910 F. Supp. 609 (M.D. Fla. 1995) ..... 10

*Eirman v. Olde Discount Corp.*, 697 So. 2d 865 (Fla. 4th DCA 1997) ..... 16

*Elsroth v. Johnson & Johnson*, 700 F. Supp. 151 (S.D.N.Y. 1988) ..... 4

*Fagan v. Amerisourcebergen Corp.*, 356 F. Supp. 2d 198 (E.D.N.Y. 2004) ........................ *passim*

*Fogie v. Thorn Americas, Inc.*, 190 F.3d 889 (8th Cir. 1999) ............................................ 12, 13

*Fulton v. Hecht*, 580 F.2d 1243 (5th Cir. 1978), *cert. denied*, 440 U.S. 981 (1979)...................... 3

*Grinder v. Tex. Oil & Gas Corp.*, 868 F.2d 1147 (10th Cir. 1989) ...................................... 12, 13

*Haun v. Don Mealy Imports, Inc.*, 285 F. Supp. 2d 1297 (M.D. Fla. 2003)................................. 4

*Hernandez v. Tallahassee Med. Center, Inc.*, 896 So. 2d 839 (Fla. 1st DCA 2005)...................... 5

*Himes v. Brown & Co. Secs. Corp.*, 518 So. 2d 937 (Fla. 3d FCA 1987)............................ 17, 18

*Holloway v. Bristol-Myers Corp.*, 485 F.2d 986 (D.C. Cir. 1973) .......................................... 3, 4

*In re Air Bag Prods. Liab. Litig.*, 7 F. Supp. 2d 792 (E.D. La. 1998) ........................................ 19

*In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*, 288 F.3d 1012 (7th Cir. 2002) ....... 19

*In re Cascade Int'l Sec. Litig.*, 840 F. Supp. 1558 (S.D. Fla. 1993) ................................. 7, 11, 14

*In re Managed Care Litig.*, 150 F. Supp. 2d 1330, 1351 (S.D. Fla. 2001)................................ 13

*In re Sahlen & Assoc., Inc. Sec. Litig.*, 773 F. Supp. 342 (S.D. Fla. 1991).......................... 12, 13

*Intergraph Corp. v. Stearman*, 555 So. 2d 1282 (Fla. 2d DCA 1990) ........................................ 9

*Jackson v. BellSouth Telecomm.*, 372 F.3d 1250 (11th Cir. 2004)............................................... 3

*Jenkins v. W.L. Roberts, Inc.*, 851 So. 2d 781 (Fla. 1st DCA 2003)............................................ 4

*Jeter v. Credit Bureau*, 760 F.2d 1168 (11th Cir. 1985)............................................................ 3

*K.M. v. Publix Super Mkts., Inc.*, 895 So. 2d 1114 (Fla. 4th DCA 2005)...................................... 5

*Lewis v. Casey*, 518 U.S. 343 (1996)........................................................................................ 18

*Lowe v. Entcom, Inc.*, 2005 WL 1667681 (M.D. Fla. 2005) ....................................................... 4

*McNally v. United States*, 483 U.S. 350, 107 S. Ct. 2875, 97 L. Ed. 2d 292 (1987).................... 11

*Merrill Lynch Bus. Fin. Serv. Inc. v. Performance Machine Sys. U.S.A., Inc.*, 2005 WL 975773 (S.D. Fla. Mar. 4, 2005)........................................................................ 15, 16

*National Alcoholism Programs/Cooper City, Florida, Inc. v. Palm Springs Hosp. Employee Benefit Plan*, 825 F. Supp. 299 (S.D. Fla. 1993) ............................................................. 17

*Nugget Hydroelectric, L.P. v. Pacific Gas & Elec. Co.*, 981 F.2d 429 (9th Cir. 1992)................ 13

*O'Malley v. O'Neill*, 887 F.2d 1557 (11th Cir. 1989), *cert. denied*, 496 U.S. 926 (1990)........... 11

*O'Shea v. Littleton*, 414 U.S. 488 (1974)........................................................................ 18, 19

*Ouaknine v. MacFarlane*, 897 F.2d 75 (2d Cir. 1990)............................................................ 13

*Panfil v. ACC Corp.*, 768 F. Supp. 54 (W.D.N.Y. ), *aff'd*, 952 F.2d 394 (2d Cir. 1991)....... 10, 11

*Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580 (5th Cir. 1992).................... 13

*Pelletier v. Zweifel*, 921 F.2d 1465 (11th Cir. 1991), *cert. denied*, 358 U.S. 927 (1959)........... 11

*Pierce v. Ritter, Chusid, Bivonia & Cohen*, 133 F. Supp. 2d 1344 (S.D. Fla. 2001).................. 14

*PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773 (Fla. 2003).......................................... 15

*Republic of Panama v. BCCI Holdings (Luxembourg)*, 119 F.3d 935 (11th Cir. 1997).... 9, 11, 12

*Rosa v. Amoco Oil Co.*, 262 F. Supp. 2d 1364 (S.D. Fla. 2003)................................................. 3

*Ross v. A.H. Robins Co.*, 607 F.2d 545 (2d Cir. 1979)............................................................. 7

*Rousseff v. E.F. Hutton Co., Inc.*, 843 F.2d 1326 (11th Cir. 1988)............................................. 18

*Samuels v. King Motor Co. of Fort Lauderdale*, 782 So. 2d 489 (Fla. 4th DCA 2001).............. 15

*Shibata v. Lim*, 133 F. Supp. 2d 1311 (M.D. Fla. 2000)....................................................... 16, 17

*State v. Marks, P.A.*, 654 So. 2d 1184 (Fla. 4th DCA 1995)........................................................ 6

*T.W.M. v. American Med. Sys., Inc.*, 886 F. Supp. 842 (N.D. Fla. 1995)................................. 8, 9

*The Procter & Gamble Co. v. Quality King Distrib., Inc.*, 974 F. Supp. 190
(E.D.N.Y. 1997)...................................................................................................... 7, 8, 16, 17

*Trespalacios v. Valor Corp. of Florida*, 486 So. 2d 649 (Fla. 3d DCA 1986)............................. 5

*United States v. Cochran*, 108 F.3d 660 (10th Cir. 1997)..................................................... 10, 11

*United States v. Kreimer*, 609 F.2d 126 (5th Cir. 1980), *cert. denied*, 358 U.S. 927 (1959)....... 11

*United States v. Kyle*, 257 F.2d 559 (2d Cir. 1958), *cert. denied*, 358 U.S. 927 (1959)............. 11

*Zehel-Miller v. Astrazenaca Pharm., LP*, 223 F.R.D. 659 (M.D. Fla. 2004)................................ 4



STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
MUSEUM TOWER, 150 WEST FLAGLER STREET, MIAMI, FLORIDA 33130 • TELEPHONE (305) 789-3200

**Statutes & Court Rules**

15 U.S.C. § 45 .......... 1, 3, 4

15 U.S.C. § 52 .......... 1, 3, 4

18 U.S.C. § 1961(1) .......... 9

18 U.S.C. § 1962(a) .......... 9, 12, 13

18 U.S.C. § 1964(c) .......... 12

Fla. Stat. § 501.204 .......... 15

Fla. Stat. § 501.212(3) .......... 16

Fed. R. Civ. P. 9(b) .......... 14

S.D. Fla. L.R. 12.1 .......... 14

**Treatises**

Dobbs, THE LAW OF TORTS, § 481 at 1375 (West 2001) .......... 6



STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
MUSEUM TOWER, 150 WEST FLAGLER STREET, MIAMI, FLORIDA 33130 • TELEPHONE (305) 789-3200

Defendant The Procter & Gamble Company ("P&G") files this Memorandum of Law in support of its Motion to Dismiss all claims filed by Plaintiffs.

INTRODUCTION AND SUMMARY OF ARGUMENT

This is a case in which the Plaintiffs blame the victim of a crime for the crime itself. Instead of suing the manufacturer of counterfeit Head & Shoulders and counterfeit Pantene, the Plaintiffs filed suit against P&G, the manufacturer of authentic Head & Shoulders and Pantene.[2] Even though P&G did not manufacture, authorize or sell the counterfeit Head & Shoulders or counterfeit Pantene, Plaintiffs seek to hold P&G liable for the counterfeiters' illegal actions. No authority exists for holding the victim of an illegal counterfeiting scheme liable for injuries caused by the illegal counterfeiting.

The counterfeiters, not P&G, misrepresented that the counterfeit Head & Shoulders and counterfeit Pantene were authentic. The counterfeiters, not P&G, manufactured unsafe products that allegedly created increased medical risks. Plaintiffs' attempt to hold P&G liable for the illegal acts of the counterfeiters should be rejected.

Multiple reasons support the dismissal of each cause of action. The alleged violations of 15 U.S.C. § 45 and 15 U.S.C. § 52 should be dismissed because no private cause of action exists for violations of those provisions. Each of Plaintiffs' claims except for the implied warranty cause of action hinges on the allegation that P&G should have conducted an advertising campaign to inform the public about the counterfeit Head & Shoulders and the counterfeit

[2] Michael Miller, one of the lawyers for the purported class, represents one of the counterfeiters of Head & Shoulders and Pantene. Mr. Miller's representation of one of the counterfeiters may explain why the Plaintiffs have sued a victim of the counterfeiting scheme instead of the counterfeiters who manufactured the counterfeit shampoo.

Pantene.[3] In order for the lack of an advertising campaign to sustain a cause of action, P&G would have to owe a duty to conduct an advertising campaign. P&G, however, does not owe a duty to conduct a nationwide advertising campaign about the illegal counterfeit products or the danger posed by the illegal counterfeit products.[4] Because P&G does not owe such a duty, all causes of action relying upon the allegation that P&G should have conducted an advertising campaign should be dismissed.

In addition to the absence of a duty to speak, the fraud allegation should be dismissed because scienter has not been alleged. The implied warranty cause of action should be dismissed because P&G as a manufacturer did not provide a warranty on either the counterfeit Head & Shoulders or the counterfeit Pantene and because no privity exists between P&G and Plaintiffs. The RICO cause of action should be dismissed because the Complaint fails to allege a predicate act, fails to allege damage as a result of the racketeering violation, and fails to plead with the required particularity. The RICO cause of action should also be dismissed for Plaintiffs' failure to file the Civil RICO Case Statement required by S.D. Fla. L.R. 12.1.

The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") claim should be dismissed because the Complaint fails to allege prohibited acts, because FDUTPA does not cover personal injury claims such as those alleged in this case, and because P&G did not sell or manufacture the counterfeit products. Finally, all claims should be dismissed because proximate

---

[3] Plaintiffs' premise that P&G has failed to take any action to stop the counterfeiting (Complaint, ¶ 2) is false and known to be false by the Plaintiffs. The Complaint itself (¶ 12) identifies a lawsuit filed by P&G seeking to stop the illegal counterfeiting of Head & Shoulders and Pantene. P&G has aggressively pursued the counterfeiters. P&G informed the FDA of the counterfeit products, obtained orders enabling law enforcement officials to seize counterfeit shampoo, and informed retailers.

[4] Plaintiffs do not suggest why the victim of an illegal counterfeiting scheme should have to spend potentially millions of dollars on a nationwide advertising campaign.

cause does not exist and because the Plaintiffs lack standing since they have not alleged any actual, present injury.

## I. DISMISSAL SHOULD BE GRANTED WHEN THE COMPLAINT FAILS TO ALLEGE A CAUSE OF ACTION

"[T]o withstand a motion to dismiss, it is axiomatic that the Complaint must allege facts sufficiently setting forth the essential elements of a cause of action." *Rosa v. Amoco Oil Co.*, 262 F. Supp. 2d 1364, 1366 (S.D. Fla. 2003) (dismissing fraud and FDUTPA claims). "To survive a motion to dismiss, plaintiffs must do more than merely state legal conclusions; they are required to allege some specific factual bases for those conclusions or face dismissal of their claims." *Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1263 (11th Cir. 2004) (affirming dismissal of RICO and conspiracy claims). If the complaint fails to "allege facts sufficiently setting forth the essential elements of a cause of action," dismissal should be granted. *See Rosa,* 262 F. Supp. 2d at 1366. In this case, the Complaint states conclusory allegations without providing a factual basis for any cause of action.

## II. THE COMPLAINT FAILS TO STATE A VIOLATION OF 15 U.S.C. § 45 AND 15 U.S.C. § 52 BECAUSE NO PRIVATE CAUSE OF ACTION EXISTS

Plaintiffs allege violations of 15 U.S.C. § 45 (first cause of action) and 15 U.S.C. § 52 (sixth cause of action). No private cause of action exists, however, for violations of 15 U.S.C. § 45 or 15 U.S.C. § 52. *E.g., Jeter v. Credit Bureau,* 760 F.2d 1168, 1174 n.5 (11th Cir. 1985) (FTC Act does not provide private cause of action); *Fulton v. Hecht*, 580 F.2d 1243, 1248 n.2 (5th Cir. 1978)[5] ("no private cause of action for violation of the FTC Act"), *cert. denied*, 440 U.S. 981 (1979); *Holloway v. Bristol-Myers Corp.*, 485 F.2d 986, 988-89 (D.C. Cir. 1973)

---

[5] Decisions of the former Fifth Circuit prior to October 1, 1981, are binding in the Eleventh Circuit. *Bonner v. Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).



STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
MUSEUM TOWER, 150 WEST FLAGLER STREET, MIAMI, FLORIDA 33130 • TELEPHONE (305) 789-3200

(affirming dismissal because no private cause of action exists for 15 U.S.C. §§ 45, 52 and 54); *Haun v. Don Mealy Imports, Inc.*, 285 F. Supp. 2d 1297, 1306-07 (M.D. Fla. 2003) (FTC Act claims dismissed for failure to state a claim because no private cause of action exists). As a result, the first and sixth causes of action should be dismissed. *E.g., Holloway*, 485 F.2d at 988-89 (affirming dismissal of claims brought under 15 U.S.C. §§ 45 and 52).

## III. BECAUSE NO DUTY EXISTS, THE COMPLAINT FAILS TO STATE A CLAIM OF NEGLIGENCE OR MEDICAL MONITORING

Plaintiffs' negligence (third cause of action) and medical monitoring (second cause of action) claims fail to allege causes of action because P&G did not, and does not, have a duty to warn about the illegal acts of the counterfeiters.[6]

'"The duty element of negligence is a threshold legal question; if no legal duty exists, then no action for negligence may lie."' *Lowe v. Entcom, Inc.*, 2005 WL 1667681 (M.D. Fla. 2005) (dismissing negligence cause of action) (quoting *Jenkins v. W.L. Roberts, Inc.*, 851 So.2d 781, 783 (Fla. 1st DCA 2003)). "[A] manufacturer does not have a duty to anticipate and prevent criminal conduct by third parties." *Fagan v. Amerisourcebergen Corp.*, 356 F. Supp. 2d 198, 207 (E.D.N.Y. 2004) (dismissing negligence claim against manufacturer brought by plaintiff injured by taking counterfeit drugs). As a consequence, a manufacturer does not have a duty to warn about counterfeit products or the safety of counterfeit products. *Id. See also Elsroth v. Johnson & Johnson*, 700 F. Supp. 151, 167 (S.D.N.Y. 1988) (summary judgment on alteration of drug because "no common-law duty to warn of potential criminal misuses of a product" exists); *Deisler v. Quality King Distrib., Inc.*, Index No. 14650/96, summary judgment

---

[6] "Negligence is one of the elements of the medical monitoring cause of action recognized by Florida's Third District Court of Appeal." *Zehel-Miller v. Astrazenaca Pharm. LP*, 223 F.R.D. 659, 664 n.6 (M.D. Fla. 2004). As a result, if the cause of action for negligence fails, the cause of action for medical monitoring fails.

at 9 (N.Y. Supr. Ct. Queens County June 18, 2002) (summary judgment granted on negligence cause of action brought against P&G by a user of counterfeit Head & Shoulders) (attached as Exhibit A).

"The fact that a defendant may realize that some action may be necessary for another's aid or protection does not by itself impose a duty upon the defendant to take such action." *Hernandez v. Tallahassee Med. Ctr., Inc.*, 896 So. 2d 839, 842 (Fla. 1st DCA 2005) (affirming dismissal of negligence claim because no duty existed to prevent harm), *rev. denied*, Table No. SC05-464 (May 23, 2005). "The general rule is that a party has no legal duty to 'prevent the misconduct of third persons.'" *K.M. v. Publix Super Mkts., Inc.*, 895 So. 2d 1114, 1117 (Fla. 4th DCA 2005) (affirming dismissal of negligence cause of action where allegation was that defendant should have warned plaintiff of the potential danger of a third party). *See also Trespalacios v. Valor Corp. of Florida*, 486 So.2d 649, 650-51 (Fla. 3d DCA 1986) (affirming dismissal because no duty existed to warn of potential illegal use of product).

Because P&G did not and does not have a duty to spend potentially millions of dollars on an advertising campaign to warn that someone is illegally counterfeiting shampoo, the negligence cause of action should be dismissed. *Fagan*, 356 F. Supp. 2d at 207 (dismissing negligence cause of action because no duty to warn about counterfeiting of product).

## IV. <u>THE COMPLAINT FAILS TO ALLEGE A FRAUD CAUSE OF ACTION</u>

Plaintiffs base their allegation of fraud (fourth cause of action) on P&G's nondisclosure of the existence of counterfeit products that might be dangerous. Complaint, ¶¶ 56-58. The fraud allegations fail to state a cause of action.

A. Because P&G did not have a duty to disclose anything about the counterfeiters, the fraud claim should be dismissed.

"When an allegation of fraud is based upon nondisclosure, there can be no fraud absent a duty to speak." *Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164, 174, 114 S.Ct. 1439, 1447, 128 L.Ed.2d 119 (1994) (reinstating summary judgment for defendant) (quoting *Chiarella v. United States*, 445 U.S. 222, 235, 100 S. Ct. 1108, 1118, 63 L.Ed.2d 348 (1980) (reversing fraud conviction because no duty existed to speak)). "Generally, a duty to disclose arises 'when one party has information that the other party has the right to know because of the fiduciary or other relationship of trust or confidence between them.'" *Barnes v. Burger King Corp.*, 932 F. Supp. 1420, 1429 (S.D. Fla. 1996) (granting summary judgment in a fraudulent inducement cause of action because no fiduciary or other confidential relationship existed) (quoting *State v. Marks, P.A.*, 654 So. 2d 1184, 1189 (Fla. 4th DCA 1995)). A manufacturer does not have a duty to disclose anything about the dangers of counterfeit products created by a third party. *Fagan*, 356 F.Supp.2d at 207 (no duty to disclose about danger of counterfeit products). *See also Deisler*, summary judgment at 8 (summary judgment granted on fraud cause of action brought against P&G by a user of counterfeit Head & Shoulders) (Ex. A).

The Complaint fails to allege any facts that suggest any fiduciary or other relationship of trust or confidence between the Plaintiffs and P&G. The Complaint fails to make any allegation that would avoid the "traditional rule" that someone like P&G "is not ordinarily obliged to make affirmative revelations." Dobbs, THE LAW OF TORTS, § 481 at 1375 (West 2001) (describing liability for nondisclosure). The Complaint describes the relationship between P&G and the Plaintiffs as merely a commercial one without any indicia of a fiduciary relationship. As a consequence, the fraud claim should be dismissed. *E.g. Barnes,* 932 F. Supp. at 1429 (no obligation to disclose "as a matter of law" because no fiduciary or confidential relationship).

B. The failure to allege scienter requires dismissal.

"Under Florida law, the cause[] of action of fraud ... require[s] scienter." *Banco Latino Int'l v. Lopez,* 95 F. Supp. 2d 1327, 1336 (S.D. Fla. 2000) (granting summary judgment on fraud claim for failure to prove intent to defraud). To avoid a dismissal, plaintiffs must specifically plead those facts that "'give rise to a strong inference' that the defendants had an intent to defraud." *Connecticut Nat'l Bank v. Fluor Corp.*, 808 F.2d 957, 962 (2d Cir. 1987) (affirming dismissal because no scienter) (quoting *Ross v. A.H. Robins Co.*, 607 F.2d 545, 558 (2d Cir. 1979)). *See also In re Cascade Int'l Sec. Litig.*, 840 F. Supp. 1558, 1583 (S.D. Fla. 1993) (Rule 9(b) requires that "the Complaint must set forth sufficient facts to establish, if true, the requisite intent" dismissing RICO claim), on reconsideration, 894 F. Supp. 437 (S.D. Fla. 1995) (dismissing securities fraud claim, but not reconsidering RICO dismissal).

The Complaint fails to identify any facts that suggest in any way, much less giving a "strong inference," that P&G intended to defraud the public. Complaint, ¶¶ 54-61. At best, the Complaint alleges that P&G intended for consumers to purchase P&G products by advertising true statements "concerning the quality and features of the products, including their safety." Complaint, ¶ 55. P&G's truthful statements about its own products do not suggest in any way that P&G intended to mislead or defraud consumers. The few facts alleged do not meet the requirement that plaintiffs have to plead facts that show an intent to defraud. *See Connecticut Nat'l,* 808 F.2d at 962 (affirming dismissal because no scienter); *Banco Latino,* 95 F. Supp. 2d at 1336 (summary judgment because the facts did not show an intent to defraud). The fraud cause of action should be dismissed as a result.

## V. BREACH OF IMPLIED WARRANTY CLAIM FAILS TO STATE A CLAIM

### A. This Court should dismiss the implied warranty cause of action (fifth cause of action) because P&G did not provide a warranty for counterfeit products.

No implied warranty cause of action against a manufacturer exists for a consumer who purchases counterfeit goods. *E.g., The Procter & Gamble Co. v. Quality King Distributors, Inc.*, 974 F. Supp. 190, 199-200 (E.D.N.Y. 1997) (granting P&G's motion to dismiss breach of warranty counterclaim related to counterfeit Head & Shoulders); *Deisler*, summary judgment at 8 (summary judgment granted on implied warranty cause of action brought against P&G by a user of counterfeit Head & Shoulders because P&G does not give an implied warranty on counterfeit goods manufactured by someone other than P&G) (Ex. A). Specifically, the purchase of counterfeit Head & Shoulders shampoo does not create a cause of action for breach of warranty against P&G. *Id.* As the court in *Procter & Gamble v. Quality King* explained, no authority "supports the proposition that a manufacturer may breach an express warranty it gives on a genuine product in connection with the sale by others of non-genuine, counterfeit products that it did not authorize, distribute or produce." *Procter & Gamble*, 974 F. Supp. at 199-200. P&G did not "make implied warranties since they did not manufacture the counterfeit bottle of shampoo." *Deisler*, summary judgment at 8 (Ex. A). P&G did not breach a warranty with respect to the counterfeit products because "[n]o warranties were made by the P&G companies with regard to the counterfeit Head & Shoulders shampoo" or the counterfeit Pantene shampoo. *P&G*, 974 F. Supp. at 200.

The Complaint alleges that P&G made representations and warranties with respect to authentic Head & Shoulders and authentic Pantene (Complaint at ¶ 63), but the Complaint does not allege any facts to suggest in any way that P&G made any warranty, express or implied, with respect to the counterfeit products. As a result, the breach of warranty claim should be

dismissed. *Procter & Gamble,* 974 F. Supp. at 199-200 (granting P&G's motion to dismiss breach of warranty counterclaim because "[n]o warranties were made by the P&G companies with regard to the counterfeit Head & Shoulders shampoo").

B. Plaintiffs' failure to properly plead privity requires dismissal of their breach of warranty claim.

"[T]o recover for a breach of a warranty, either express or implied, the Plaintiff must be in privity of contract with the defendant." *T.W.M. v. American Med. Sys., Inc.,* 886 F. Supp. 842, 844 (N.D. Fla. 1995) (dismissing breach of implied warranty because no privity existed). *See also Affiliates for Evaluation and Therapy, Inc. v. Viasyn Corp.,* 500 So. 2d 688, 692 (Fla. 3d DCA 1987) (affirming dismissal of plaintiff's breach of warranty causes for failure to allege privity of contract); *Intergraph Corp. v. Stearman,* 555 So. 2d 1282, 1283 (Fla. 2d DCA 1990) (reversing breach of warranty judgment because no privity of contract existed).

"A plaintiff who purchases a product, but does not buy it directly from the defendant, is not in privity with that defendant." *T.W.M.*, 886 F. Supp. at 844. When a complaint fails to allege that the plaintiff purchased the product with an implied warranty directly from the defendant, the complaint should be dismissed. *Id.* Here, the Complaint fails to allege that Plaintiffs purchased anything directly from P&G. As a result, the implied warranty cause of action should be dismissed. *Id.*

VI. PLAINTIFFS' RICO CLAIM FAILS AS A MATTER OF LAW

Although not specifically identified, the Complaint (in the seventh cause of action) appears to attempt to allege a RICO cause of action under 18 U.S.C. § 1962(a) since it alleges that income from a pattern of racketeering activity was used or invested to operate the unidentified enterprise. Complaint at ¶ 75. In order to state a RICO claim, a plaintiff must be "victimized by a criminal enterprise." *Banco Latino*, 95 F. Supp. 2d at 1332 (granting summary

judgment). The criminal enterprise in this case is the illegal counterfeiting operation and not P&G's manufacture and sale of authentic Head & Shoulders and Pantene.

A. Plaintiffs fail to allege a RICO predicate act.

In order to adequately plead a RICO claim, a Complaint requires a description of a predicate act – a "violation of any of the criminal statutes listed in [18 U.S.C.] § 1961(1)." *Republic of Panama v. BCCI Holdings (Luxembourg)*, 119 F.3d 935 (11th Cir. 1997) (affirming dismissal of RICO claims). "Section 1961 requires that a RICO plaintiff establish that a defendant could be convicted for violating any of its predicate statutes." *Id.* Dismissal should be granted when a "Plaintiff fail[s] to allege any act constituting 'racketeering activity.'" *Eidson v. Arenas*, 910 F. Supp. 609, 614 (M.D. Fla. 1995) (dismissing RICO claim).

(1) Because no duty exists to disclose counterfeiting, wire fraud does not exist.

"When an allegation of fraud is based upon nondisclosure, there can be no fraud absent a duty to speak." *Chiarella v. United States*, 445 U.S. 222, 235, 100 S. Ct. 1108, 1118, 63 L. Ed. 2d 348 (1980) (reversing fraud conviction based on nondisclosure). A RICO claim should be dismissed if the Complaint bases wire fraud predicate acts on a failure to disclose unless a duty to disclose exists. *Panfil v. ACC Corp.*, 768 F. Supp. 54, 61-62 (W.D.N.Y.) (dismissing RICO claim), *aff'd*, 952 F.2d 394 (2d Cir. 1991) (table). In the absence of a statute or a regulation or some other duty that requires the disclosure of the information that was allegedly not disclosed, a wire fraud conviction cannot be sustained as a matter of law. *E.g., United States v. Cochran*, 108 F.3d 660, 665 (10th Cir. 1997) (reversing wire fraud conviction based on a failure to disclose). In *Cochran*, the Tenth Circuit analyzed a wire fraud conviction based on a failure to disclose. *Id.* In its analysis, the court looked at a variety of statutes, fiduciary obligations, and regulations and determined that none of them provided a clear requirement that disclosure had to be made. *Id.* at

665-667. The court held that in the absence of a clear requirement that disclosure was required, the conviction had to be reversed. *Id.*

Plaintiffs allege that P&G failed to disclose that counterfeit shampoos were being manufactured by someone else. Complaint, ¶ 76. Although P&G sued and aggressively pursued the counterfeiters, P&G did not have an obligation to create an advertisement about a product manufactured by someone else that was illegally being marketed as P&G's products. *See Fagan*, 356 F. Supp. 2d at 207 (dismissal of negligence claim because manufacturer had no duty to warn consumer about counterfeit products). No statute or regulation exists requiring P&G to advertise about counterfeit products and Plaintiffs do not allege any facts that suggest P&G is in a fiduciary relationship with the Plaintiffs. As a result, no predicate act has been alleged and the RICO claim should be dismissed. *Cochran*, 108 F.3d at 665 (reversing wire fraud conviction based on a failure to disclose because no statutory or regulatory duty to disclose existed and no fiduciary relationship existed); *Panfil,* 768 F. Supp. at 61-62 (dismissing RICO claim because no duty to disclose).

(2) Because specific intent to defraud does not exist, wire fraud does not exist.

"[S]ince Rule 9(b) applies to RICO actions, the Complaint must set forth sufficient facts to establish, if true, the requisite intent." *In re Cascade*, 840 F. Supp. at 1583 (dismissing RICO claim). The "requisite intent" is that "the defendant must have 'had a 'conscious knowing intent to defraud.''" *Pelletier v. Zweifel*, 921 F.2d 1465, 1499 (11th Cir. 1991) (affirming dismissal of wire fraud claim) (quoting *United States v. Kreimer*, 609 F.2d 126, 128 (5th Cir. 1980) (quoting *United States v. Kyle*, 257 F.2d 559, 564 (2d Cir. 1958), *cert. denied*, 358 U.S. 927 (1959))), *cert. denied*, 502 U.S. 855 (1991). The "scheme must have been undertaken with the intent to deprive [the plaintiffs] 'of something by trick, deceit, chicane or overreaching.'" *Banco Latino*,

95 F. Supp. 2d at 1334 (quoting *McNally v. United States*, 483 U.S. 350, 358, 107 S. Ct. 2875, 97 L.Ed.2d 292 (1987)). "A RICO plaintiff's allegations of scienter cannot be 'merely conclusory and unsupported by any factual allegations.'" *Republic of Panama*, 119 F.3d at 949 (affirming dismissal of RICO claim) (quoting *O'Malley v. O'Neill*, 887 F.2d 1557, 1560 (11th Cir. 1989) (dismissing RICO claim), *cert. denied*, 496 U.S. 926 (1990)).

In this case, the Complaint does not contain a single fact suggesting that P&G intended to deprive consumers of anything or that P&G intended for Plaintiffs to purchase counterfeit products. In fact, the sparse facts alleged show that P&G merely wanted to advertise that authentic Head & Shoulders and Pantene were "superior product[s]" (Complaint at ¶ 76) in order to sell authentic Head & Shoulders and authentic Pantene. P&G's truthful statements about its own products do not suggest in any way that P&G intended to "deprive" Plaintiffs '"by trick, deceit, chicane or overreaching.'" Plaintiffs "plead simply a use of the wires, but lack the necessary specificity and particularity to support a showing of probable cause of intent to defraud." *Banco de Sarrollo Agropecuario v. Gibbs*, 640 F. Supp. 1168, 1175 (S.D. Fla. 1986) (dismissing RICO claim). Plaintiffs' failure to include any facts about P&G's intent to defraud and deprive the class of anything requires dismissal. *E.g., Republic of Panama*, 119 F.3d at 949 (affirming dismissal of RICO claim).

B. Plaintiffs fail to allege damage as a result of a racketeering violation.

Section 1964(c) only permits a person "injured … by reason of a violation of section 1962" to sue for a RICO violation. *E.g., Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991) (one of the "essential elements" of a RICO claim is "that the violation caused the injury"), *cert. denied*, 502 U.S. 1048 (1992). Section 1962(a) "prohibit[s] the investment of proceeds derived from criminal activity in an enterprise engaged in interstate commerce." *Brooks v. Bank of Boulder*, 891 F. Supp. 1469, 1479 (D. Colo. 1995). Therefore, "pleading injuries from the

racketeering acts, without more, is insufficient to state a claim under § 1962(a), as that provision does not prohibit those acts." *In re Sahlen & Assoc., Inc. Sec. Litig.*, 773 F.Supp. 342, 367 (S.D. Fla. 1991) (citing *Grinder v. Tex. Oil & Gas Corp.*, 868 F.2d 1147, 1149 (10th Cir. 1989)). Plaintiffs must plead that their injury flowed from P&G's use or investment of racketeering income instead of from predicate racketeering acts. *Id. See also Grinder*, 868 F.2d at 1149 (affirming dismissal because plaintiff "failed to allege any facts showing any injury from the use or investment of racketeering income"); *Fogie v. Thorn Americas, Inc.*, 190 F.3d 889, 895 (8th Cir. 1999) ("RICO gives only individuals who have suffered injury from the use or investment of racketeering income standing to bring civil suit under § 1962(a)"); *Nugget Hydroelectric, L.P. v. Pacific Gas & Elec. Co.*, 981 F.2d 429, 437 (9th Cir. 1992) ("a plaintiff seeking civil damages for a violation of section 1962(a) must allege facts tending to show that he or she was injured by the use or investment of racketeering income"), *cert. denied*, 508 U.S. 908 (1993); *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 584 (5th Cir. 1992) (affirming dismissal of a section 1962(a) claim because plaintiff's "injury does not stem from the investment of the income from racketeering activity"); *Danielsen v. Burnside-Ott Aviation Training Ctr., Inc.*, 941 F.2d 1220, 1229-30 (D.C. Cir. 1991) (same); *Ouaknine v. MacFarlane*, 897 F.2d 75, 82 (2d Cir. 1990) (same). *But see In re Managed Care Litig.*, 150 F. Supp. 2d 1330, 1351 (S.D. Fla. 2001). In other words, Plaintiffs must plead and prove a direct causal relationship between P&G's use or investment of income received by P&G and Plaintiffs' damages. *E.g., Grinder*, 868 F.2d at 1149; *In re Sahlen*, 773 F. Supp. at 367.

Plaintiffs do not even attempt to allege any injury directly caused by P&G's alleged investment or use of money acquired through the alleged racketeering. At most, plaintiffs unsuccessfully attempt to allege damage resulting from the predicate acts themselves. Because

Plaintiffs fail to allege any damage as a result of the use or investment of racketeering income, their RICO claim should be dismissed. *E.g., Fogie*, 190 F.3d at 895 (affirming dismissal of section 1962(a) claim).

C. Plaintiffs' RICO allegations fail for lack of particularity.

To avoid dismissal, the Complaint must allege "(1) the precise statements, documents or misrepresentations made; (2) the time, place, and person responsible for the statements; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what [P&G] has gained by the alleged fraud." *Brooks v. Blue Cross and Blue Shield of Florida*, 116 F.3d 1364, 1381 (11th Cir. 1997) (Southern District of Florida's summary judgment attached to 11th Circuit affirmance). "All of the concerns [under FED. R. CIV. P. 9(b)] that dictate that fraud be pleaded with particularity exist with even greater urgency in civil RICO actions." *A. Terzi Prods., Inc. v. Theatrical Protective Union*, 2 F. Supp. 2d 485, 489 (S.D.N.Y. 1998).

Plaintiffs' RICO allegations do not describe any facts with any specificity. Plaintiffs do not identify any facts that indicate that false statements have been made and do not identify any facts that suggest a predicate act of racketeering activity. As a result, the RICO cause of action should be dismissed. *E.g., In re Cascade*, 840 F. Supp. at 1582 (dismissing RICO claim because of a lack of specificity).

D. Plaintiffs failure to comply with Local Rule 12.1 requires dismissal.

Pursuant to S.D. Fla. L.R. 12.1, a plaintiff asserting a RICO claim must file a Civil RICO Case Statement within thirty days of the filing of a complaint. Plaintiffs filed the Complaint on June 22, 2005. They were required to file the Civil RICO Case Statement on or before July 22, 2005. Plaintiffs failed to file or serve a Civil RICO Case Statement. The details required by Local Rule 12.1 have not been furnished in the Complaint. Because Plaintiffs have refused to comply with Local Rule 12.1, the RICO claim should be dismissed. *Pierce v. Ritter, Chusid,*

*Bivonia & Cohen*, 133 F. Supp. 2d 1344, 1346 (S.D. Fla. 2001) (dismissing RICO claim because "failure to include a RICO statement as required by Local Rule 12.1 is grounds for dismissing both the Federal and State RICO counts").

## VII. DISMISSAL SHOULD BE GRANTED ON PLAINTIFFS' DECEPTIVE AND UNFAIR TRADE PRACTICES ACT CLAIM

Plaintiffs' last cause of action is based on P&G's alleged violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). Because the Complaint fails to state a cause of action under FDUTPA, the FDUTPA claim should be dismissed.

### A. Because the facts alleged do not constitute unfair or deceptive acts, the FDUTPA claim should be dismissed.

In order to state a cause of action for a FDUTPA violation, a plaintiff must plead facts constituting "unconscionable acts or practices, [or] unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204. To violate FDUTPA, the alleged conduct must "'offend[] established policy'" <u>and</u> be "'immoral, unethical, oppressive, unscrupulous or substantially injurious.'" *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003). *See also Merrill Lynch Bus. Fin. Serv., Inc. v. Performance Machine Sys. U.S.A., Inc.*, 2005 WL 975773, *9 (S.D. Fla. Mar. 4, 2005) (dismissing FDUTPA claim and listing criteria for violation of FDUTPA) (quoting *Samuels v. King Motor Co. of Fort Lauderdale*, 782 So. 2d 489, 499 (Fla. 4th DCA 2001)); *Betts v. Advance AM*, 213 F.R.D. 466, 482 (M.D. Fla. 2003) (granting summary judgment because the acts were not unfair or deceptive and listing standard).

The Complaint alleges that P&G violated FDUTPA by "failing to advise that counterfeit products were being sold." Complaint, ¶ 84. P&G, however, does not have a duty to conduct an advertising campaign to inform consumers about counterfeiters or about the danger of counterfeit products. *E.g., Fagan*, 356 F. Supp. 2d at 207 (dismissal because manufacturer had no duty to

warn consumers of counterfeit products). Since a manufacturer does not have an obligation to tell the consumers about the illegal activities of counterfeiters, the failure to warn cannot "offend established policy." Similarly, since a manufacturer does not have an obligation to warn consumers about counterfeit goods, the failure to tell consumers cannot be "immoral, unethical, oppressive, unscrupulous or substantially injurious." Because P&G did not make any claim about the counterfeit product, Plaintiffs "have not made out a claim for deceptive trade practices." *Procter & Gamble*, 974 F. Supp. at 201 (dismissing deceptive trade claim under New York law).

Plaintiffs "must do more than merely recite conclusory allegations; they must allege facts which properly raise recognizable FDUTPA claims." *Merrill Lynch*, 2005 WL 975773 at *9 (dismissing FDUTPA claim). Plaintiffs merely allege in a conclusory fashion that P&G's permitted activity violates FDUTPA without alleging acts that offend established public policy. As a result, Plaintiffs fail to allege a cause of action for a violation of FDUTPA. *E.g.*, *Merrill Lynch*, 2005 WL 975773 at *9; *Betts*, 213 F.R.D. at 482.

B. <u>FDUTPA does not cover personal injury causes of action.</u>

FDUTPA "does not apply to: … A claim for personal injury or death or a claim for property other than the property that is the subject of the consumer transaction." Fla. Stat. § 501.212(3). The Complaint, however, claims that the Plaintiffs have suffered "higher medical risks." Complaint, ¶ 37. Because personal injury such as that alleged by Plaintiffs cannot sustain a cause of action under FDUTPA, Fla. Stat. § 501.212(3), the FDUTPA claim should be dismissed. *See Eirman v. Olde Discount Corp.*, 697 So. 2d 865, 866 (Fla. 4th DCA 1997) (affirming dismissal of FDUTPA claim because it was a type of claim listed in section 501.212 to which the FDUTPA does not apply).

C. Because P&G did not sell or manufacture counterfeit products, the DUTPA claim should be dismissed.

"To state a cause of action under the DUTPA, the consumer must allege sufficient facts to show that the consumer has been actually aggrieved by the unfair or deceptive act committed by the *seller* in the course of trade or commerce." *Shibata v. Lim*, 133 F. Supp. 2d 1311, 1317 (M.D. Fla. 2000) (emphasis added) (dismissing FDUTPA claims). *See also Merrill Lynch*, 2005 WL 975773 at *9 ("a consumer must allege sufficient facts to show he was actually aggrieved by an unfair or deceptive act committed by the *seller*"); *National Alcoholism Programs/Cooper City, Florida, Inc. v. Palm Springs Hosp. Employee Benefit Plan*, 825 F.Supp. 299, 302 (S.D. Fla. 1993) (FDUTPA is "designed to protect consumers from suppliers who commit deceptive trade practices"). *See also Procter & Gamble*, 974 F. Supp. at 201 (dismissing deceptive trade action under New York law because "P&G did not manufacture, bottle, label, distribute, sell, advertise or otherwise authorize the production of the counterfeit Head & Shoulders"). In this case, P&G is not a seller, not a supplier, and not a manufacturer of the counterfeit goods. Because P&G did not sell, supply or manufacture the shampoo that caused the allegedly increased health risks, the motion to dismiss should be granted on the FDUTPA cause of action. *E.g.*, *Shibata*, 133 F. Supp. 2d at 1317; *Procter & Gamble*, 974 F. Supp. at 201.

VIII. DISMISSAL OF ALL CLAIMS SHOULD BE GRANTED BECAUSE PLAINTIFFS FAIL TO ALLEGE PROXIMATE CAUSE

Each of the causes of action alleged in the Complaint requires a showing of proximate cause. *See Anderson v. Smithfield Foods, Inc.*, 207 F. Supp. 2d 1358, 1364 (M.D. Fla. 2002) (dismissing RICO claim because alleged acts did not proximately cause alleged injuries), *aff'd in relevant part*, 353 F.3d 912 (11th Cir. 2003); *Bruner v. Anheuser-Busch, Inc.*, 153 F. Supp. 2d 1358, 1361 (S.D. Fla. 2001) (dismissing breach of warranty, negligence, and fraudulent advertising claims because proximate cause was not alleged), *aff'd*, 31 Fed. Appx. 932 (11th Cir.

2002) (table); *Himes v. Brown & Co. Secs. Corp.*, 518 So. 2d 937, 938 (Fla. 3d DCA 1987) (affirming judgment because no proximate cause was shown on DUTPA, fraud, or negligence).

In this case, the alleged increased medical risk was caused by the manufacture of dangerous shampoo by the counterfeiters, not by P&G. The increased medical risk was not caused by any advertising or lack of advertising. "Plaintiffs' complaint does not set forth how Defendants' alleged misrepresentation or alleged predicate acts injured their property or their use and enjoyment of their property." *Anderson*, 207 F. Supp. 2d at 1364. Even though the Complaint alleges that the Plaintiffs would not have purchased the products without the nondisclosure about the counterfeiting, Plaintiffs have failed to allege that the increased medical risk was caused by the alleged nondisclosure. *See Rousseff v. E.F. Hutton Co., Inc.*, 843 F.2d 1326, 1329 & n. 2 (11th Cir. 1988) (reversing fraud judgment because even though the misrepresentation caused the plaintiff to buy, the misrepresentation itself was not shown to have caused the injury); *Himes*, 518 So. 2d at 938 (no proximate cause shown even though false advertising existed because the injuries were not caused by the false advertising itself). Therefore, the Complaint should be dismissed.

## IX. DISMISSAL OF ALL CLAIMS SHOULD BE GRANTED BECAUSE THE NAMED PLAINTIFFS LACK STANDING

Standing is a threshold requirement for a purported class action to survive a motion to dismiss. If the named plaintiffs do not allege injury, the complaint should be dismissed. *See Lewis v. Casey*, 518 U.S. 343, 349 (1996) (fact that action brought as class action does not avoid basic requirement that plaintiffs must allege that they personally have been injured by a defendant); *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) (only *potential injury* to the class representative is insufficient).

In this case, the named Plaintiffs have alleged only an increased risk of an injury and have not identified any injury that they have suffered as a result of allegedly purchasing shampoo manufactured by P&G or as a result of purchasing counterfeit shampoo. Plaintiffs' failure to allege current, actual injury requires dismissal. The Complaint asserts that the purported class might suffer an injury some day, Complaint, ¶¶ 39-40, but no allegation exists that anyone has suffered actual injury.

A failure to allege actual injury and making a claim based simply on the alleged possibility that a product could cause an injury in the future requires dismissal on all the causes of action. *See, e.g., Briehl v. Gen. Motors Corp.*, 172 F.3d 623, 627 (8th Cir. 1999) (affirming dismissal of fraud, breach of implied warranty, violation of consumer protection statute, and breach of warranty under Florida law because no allegation existed that the products actually failed only a "tendency" to fail); *Angus v. Shiley Inc.*, 989 F.2d 142, 148 (3d Cir. 1993) (affirming dismissal because only potential injury alleged).

"[T]he common thread of the[se] cases" is always the same: "the absence of manifest injury is so fundamental a deficiency in tort or implied warranty claims that such claims are more appropriately dismissed than preserved." *In re Air Bag Prods. Liab. Litig.*, 7 F. Supp. 2d 792, 804 (E.D. La. 1998) (dismissing tort and implied warranty claims of putative class). "No injury, no tort, is an ingredient of every state's law." *In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*, 288 F.3d 1012, 1017-1018 (7th Cir. 2002), *cert. denied*, 537 U.S. 1105 (2003).

Absent a *present,* manifest injury, Plaintiffs do not have a legally viable cause of action. This lawsuit should be dismissed. *E.g., O'Shea*, 414 U.S. at 494 (dismissal appropriate of purported class action where named plaintiff only alleged potential injury).

## CONCLUSION

For the reasons stated, Plaintiffs' Complaint should be dismissed in its entirety.

Respectfully submitted,

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Suite 2200, Museum Tower
150 West Flagler Street
Miami, Florida 33130
(305) 789-3200 - Telephone
(305) 789-3395 - Facsimile

By: ____________________
JAY B. SHAPIRO
Florida Bar No. 0776361
jshapiro@swmwas.com
ADAM M. SCHACHTER
Florida Bar No. 0647101
aschachter@swmwas.com

Attorneys for Defendant
The Procter & Gamble Company

Of Counsel:

Fulbright & Jaworski LLP
Mark N. Mutterperl
Mark A. Robertson
Jenifer S. McIntosh
666 Fifth Avenue
New York, New York 10103-3198
Telephone: 212-318-3000
Telecopier: 212-318-3400

Kramer Levin Naftalis & Frankel LLP
Geoffrey Potter
Alison Sclater
Yehudis Lewis
1177 Avenue of the Americas
New York, New York 10036
Telephone: 212-715-9402
Telecopier: 212-715-8402

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was sent via U.S. mail this 27 day of July, 2005, to:

Matthew P. Slingbaum, Esq.
Gregory E. Schwartz, Esq.
Schwartz Zweben & Slingbaum
3876 Sheridan Street
Hollywood, Florida 33021

and

Michael R. Miller, Esq.
801 NE 167th Street
Second Floor
North Miami Beach, FL 33162

Adam M. Schachter

# EXHIBIT A

a-9

MEMORANDUM

SUPREME COURT : QUEENS COUNTY
IA PART 2

| | |
|---|---|
| MARJORIE DEISLER, et al.<br>- against -<br>QUALITY KING DISTRIBUTORS, INC., et al. | INDEX NO. 14650/96<br>BY: WEISS, J.<br>DATED: JUNE 18, 2002 |

Plaintiff Marjorie Deisler and plaintiff Richard Deisler have moved for an order pursuant to CPLR 3403(a)(4) granting them a trial preference. Defendant Proctor & Gamble Distributing Company ("P&G Distributing") has moved for summary judgment dismissing the complaint against it. Defendant Quality King Distributors, Inc. ("Quality") has moved for summary judgment dismissing the complaint against it. Defendant Genovese Drugs, Inc. ("Genovese") has cross-moved for summary judgment dismissing the complaint against it. Defendant Allou Distributors, Inc. ("Allou") has cross-moved for, *inter alia*, summary judgment dismissing the complaint against it.

In 1961, the Proctor & Gamble Company began to manufacture Head and Shoulders Shampoo, which is now the leading brand of dandruff shampoo sold in the United States. Proctor & Gamble Canada, an affiliate of the Proctor & Gamble Company, manufactured Head and Shoulders Shampoo for distribution in North America at a plant in Hamilton, Ontario. In or about 1992, Proctor & Gamble Canada agreed to sell waste products from its Hamilton plant to Ianco Envirotech, Inc., which

Ianco could use as it saw fit, provided, inter alia, that the product was not identified as a Proctor & Gamble product. However, some of the waste product sold by P&G Canada to Ianco was eventually used by others in the manufacture of a large quantity of counterfeit bottles of Head and Shoulders Shampoo. Defendant Quality purchased these counterfeit bottles. In 1995, the Proctor & Gamble Company began to receive complaints from consumers who had purchased some of the counterfeit bottles, and, on August 7, 1995, United States Marshals seized approximately 25,000 bottles of counterfeit Head and Shoulders Shampoo from defendant Quality.

The Proctor & Gamble Company sued defendant Quality, among others, in the United States District Court for the Eastern District of New York for trademark infringement. On September 3, 1997, the federal district court granted a motion by Proctor & Gamble Company for an order dismissing the counterclaims asserted by Quality and Omnisource International, Inc., which were for (1) trade libel, (2) prima facie tort, (3) tortious interference with business relations, (4) unfair competition, (5) breach of express warranty, (6) deceptive trade practices, and (7) contributory infringement. (The Proctor and Gamble Company v Quality King Distributors, Inc., 974 F Supp 190.) The district court gave a summary of the facts taken from the counterclaims: "*** P&G Canada would: (a) upon completion of a product run or termination of the production of certain P&G products, such as Head & Shoulders, dispose of the surplus product; (b) dispose of

waste resulting from the periodic clean out of its production equipment; and (c) dispose of those products which did not meet its specifications or quality control criteria (collectively, the 'waste products'). *** Commencing in 1992, on approximately a monthly basis, P&G Canada delivered large volumes of waste products to [Ianco Envirotech, Inc.]. *** Pursuant to the agreement between Ianco and P&G Canada, Ianco was to dispose of such surplus product and waste by mixing it with water, dye, salt, perfume and/or other ingredients before reselling it to retailers or consumers as a non-Procter & Gamble product. These were referred to as 'bastard products.' *** P&G Canada did not impose upon Ianco any restrictions or requirements as to testing, *** additives or ingredients, quality of bastard products, container size or shape of the bastard products ***. P&G Canada did, however, require that the bastard products not be identified as Procter & Gamble products. *** P&G Canada occasionally also delivered to Ianco waste products that were not in bulk but which were in individual or retail containers or bottles. ***, Ianco hired Ayesha Alam ("Alam"), a chemist, to assist Ianco in creating bastard products from the waste products. *** [A]fter leaving the employment of Ianco, Alam used waste products she had received from Ianco to manufacture bastard products that looked like Head & Shoulders hair shampoo. They were bottled in white containers shaped like the Head & Shoulders 15 oz. bottles. Alam manufactured several thousand 15 oz. bottles of Head & Shoulders type products, and sold them to A. Gruda Products ("Gruda"), a

company in the Toronto area. The 15 oz. bottles were then sold to an individual who called himself Frank Pandullo, whose real identity and residence remain a mystery. Apparently, the 15 oz. bottles were then labeled as Head & Shoulders and sold to Zoeller International Trading, Inc., which sold them to Rapid Air & Ocean, Inc. and Southern Trading International, Inc. in Florida, which in turn sold them to Omni, a Florida corporation. Omni sold these products to Quality King, which is a distributor of health and beauty aid products. *** After receiving the counterfeit products from Omni, Quality King sold them to its wholesaler and retailer customers around the United States***." (The Proctor and Gamble Company v Quality King Distributors, Inc., supra, 193-194.)

In dismissing counterclaims by Quality King and Omni for breach of express warranty, the district court found that "the parties agree that P&G did not manufacture, bottle, label, distribute, sell, advertise, or otherwise authorize the production of the counterfeit Head and Shoulders." (Proctor & Gamble Co. v Quality King Distributors, Inc., supra, 199.) The court wrote that it was not aware of any authority which "supports the proposition that a manufacturer may breach an express warranty it gives on a genuine product in connection with the sale by others of non-genuine, counterfeit products that it did not authorize, distribute or produce. *** No warranties were made by the P&G companies with regard to the counterfeit

Head & Shoulders shampoo." (Proctor & Gamble Co. v Quality King Distributors, Inc., supra, 199-200.)

On December 4, 2000, the federal district court granted a motion by Proctor & Gamble Company for summary judgment on the issue of the defendants' liability for trademark infringement in violation of 15 USC § 1114(1)(a). (The Proctor and Gamble Company v Quality King Distributors, Inc., 123 F Supp 2d 108.)

On July 26, 1995, plaintiff Marjorie Deisler and plaintiff Richard Deisler purchased a bottle of what purported to be Head and Shoulders Shampoo from a store operated by defendant Genovese located in Bethpage, New York. The bottle of shampoo was not a genuine P&G product, but was rather part of a large quantity of counterfeit products. Defendant Quality had allegedly transferred some of the counterfeit bottles of shampoo to defendant Allou, which, allegedly had delivered counterfeit bottles of shampoo to the Genovese store. The plaintiffs allege that the counterfeit bottle of shampoo was contaminated by pseudonomad bacteria. On August 4, 1995 and on August 11, 1995, plaintiff Marjorie Deisler, then age 76, used the counterfeit Head and Shoulders on her hair. (She is legally blind as a result of macular degeneration and has suffered from shingles.) Shortly thereafter, her husband, plaintiff Richard Deisler, read a newspaper article about the federal action brought by the P&G Company and about an advertisement appearing in the media warning consumers about the counterfeit product. The article informed consumers that a counterfeit bottle of Head and Shoulders

would not have a triangular recycling symbol on it, and the plaintiffs were thus able to determine that the product that they had purchased was bogus. The plaintiff complained to a consumer safety representative at P&G Company of "an annoying itch over [her] entire scalp and eyebrows." Plaintiff Marjorie Deisler also contacted "quite a few lawyers." (Tr., 87.) On or about May 22, 1996, the plaintiffs began this personal injury action.

P&G Company tested the contents of the bottle purchased by the plaintiffs and determined that the product was counterfeit. On December 12, 1995, a biopsy was performed on plaintiff Marjorie Deisler's scalp, and the results showed "subtle spongiotic dermatitis with collections of filamentous bacteria within the cornified layer of follicular infundibulum, consistent with erythrasma." (Erythrasma is a chronic, contagious skin disease caused by bacteria.) She tested negative for fungi. Plaintiff Marjorie Deisler consulted with four dermatologists, none of which informed her that her symptoms were caused by the use of bogus Head and Shoulders Shampoo. She was asked at her deposition, "Has any doctor ever told you what the cause of your hair loss was?" The plaintiff replied, "No; no, never." (Tr., 145.) She never even asked any of her doctors about the cause of her hair loss, because, "Well, they know. *** I have already told them." (Tr., 144-145.)

P&G Company had a laboratory test the contents of the bottle purchased by the plaintiffs, and the report reads in relevant part: "Microbial content is <100 CFU/gram, satisfying the

finished product release specifications. *** XII-F-7 [:] Microbial Content: < 100 CFU/gram [:] No Gram Negative Organisms." The laboratory report stated as one of its conclusions: "The presence of P&G's signature/proprietary EGDS diester distibution suggests that a P&G shampoo product could have been used as one of the components in the liquid sample."

The motion by defendant P&G Distributing for summary judgment dismissing the complaint against it is granted. The opponent of a motion for summary judgment has the burden of producing evidence in admissible form sufficient to show that there is an issue of fact which must be tried. (See, Alvarez v Prospect Hospital, 68 NY2d 320.) The plaintiffs failed to carry that burden against defendant P&G Distributing. The plaintiffs, relying on the decision issued by the federal court on the motion by P&G Company to dismiss the counterclaims asserted against it (see, The Proctor and Gamble Company v Quality King Distributors, Inc., 974 F Supp 190), have invoked the doctrine of collateral estoppel. (See, Ryan v New York Telephone Co., 62 NY2d 494.) Their reliance on that doctrine is misplaced. The motion by P&G Company to dismiss the counterclaims was addressed merely to the sufficiency of the pleadings, and on such a motion the facts as stated by the pleadings are assumed to be true, as the federal court itself acknowledged. (The Proctor and Gamble Company v Quality King Distributors, Inc., 974 F Supp 190, 195.) The P&G Company did not have a full and fair opportunity to litigate factual issues on the motion to dismiss the counterclaims asserted

in federal court. (See, Browning Ave. Realty Corp. v Rubin, 207 AD2d 263.) In any event, even assuming here the truth of some of the allegations made by the counterclaimants in the federal action, the plaintiffs do not have a meritorious cause of action against defendant P&G Distributing. The plaintiffs did not show that they are capable of proving a cause of action for fraud. The elements of a cause of action for fraud are (1) the false representation or concealment of a material existing fact, (2) scienter, (3) deception, (4) reliance and (5) injury. (See, Lama Holding Co. v Smith Barney, 88 NY2d 413; New York Univ. v Continental Ins. Co., 87 NY2d 308; New York City Transit Authority v Morris J. Eisen, P.C., 276 AD2d 78; American Home Assur. Co. v Gemma Const. Co., Inc., 275 AD2d 616; Swersky v Dreyer & Traub, 219 AD2d 321.) There is no evidence in this case that P&G companies represented to the plaintiffs that the product they purchased was Head and Shoulders Shampoo. P&G Canada's sale of "waste" products to Ianco for use in the creation of "bastard" products to be sold under a different label does not amount to fraud. The plaintiffs also did not show that they are capable of proving a cause of action against P&G companies based on breach of express warranty or breach of implied warranty. (See, Fisons Corp. v Sweeteners Plus, Inc., 258 AD2d 872.) P&G companies did not make any express warranties to the plaintiffs, nor did they make implied warranties since they did not manufacture the counterfeit bottle of shampoo purchased by them. (See, Kaloz v Risco, 120 Misc 2d 586.) "No warranties were made by the P&G companies with regard to the

counterfeit Head & Shoulders shampoo." (Proctor & Gamble Co. v Quality King Distributors, Inc., 974 F Supp 190, 199-200.) The plaintiffs, incapable of proving that P&G companies manufactured or sold the counterfeit bottle of shampoo, also do not have a cause of action based on the doctrine of strict products liability. (See, Voss v Black and Decker Manufacturing Co., 59 NY2d 102.) The plaintiffs also did not produce evidence showing that they are capable of proving a cause of action for negligence against P&G companies. "To establish a prima facie case of negligence, a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom ***." (Solomon v City of New York, 66 NY2d 1026, 1027; Murray v New York City Housing Authority, 269 AD2d 288.) There was no finding of fact in the federal action or evidence produced in this case that P&G Canada sold individual bottles of waste product to Ianco. P&G Canada did not breach a duty of care owed to the plaintiffs merely by selling usable waste products to Ianco for use in the production of "bastard" products. There was no finding of fact in the federal action that the waste products sold by P&G Canada were contaminated. The plaintiffs produced no evidence on this motion that the waste products sold by P&G Canada to Ianco were contaminated at the time they left the seller's control. Indeed, the laboratory test conducted by P&G Company on the bogus bottle of shampoo revealed no bacterial contamination, and the plaintiffs failed to produce any evidence to the contrary. In this connection, the court notes that a

speculative, hearsay affirmation by an attorney has no probative value on a motion for summary judgment. (See, Zuckerman v City of New York, 49 NY2d 557.) Finally, in regard to all of the causes of action asserted by the plaintiffs against P&G Distributing, the plaintiffs failed to raise a genuine issue of fact concerning whether the waste product sold by P&G Canada was contaminated or was the proximate cause of the injuries allegedly sustained by plaintiff Marjorie Deisler. (See, Clarke v Helene Curtis, Inc., ___ AD2d ___, ___ NYS2d ___, 2002 WL 781207.)

The cross motion by defendant Genovese for summary judgment dismissing the complaint against it is granted. The plaintiffs did not make an evidentiary showing that they are capable of proving the elements of a cause of action for fraud against Genovese. (See, Lama Holding Co. v Smith Barney, supra; New York Univ. v Continental Ins. Co., supra; New York City Transit Authority v Morris J. Eisen, P.C., supra; American Home Assur. Co. v Gemma Const. Co., Inc., supra; Swersky v Dreyer & Traub, supra.) Defendant Genovese did not make any representations to the plaintiffs, nor did the retailer know that the bottle of shampoo was bogus. Defendant Genovese did not make any express warranties to the plaintiffs. (See, UCC 2-313; Moy Acres Farms, Inc. v Agway, Inc., 212 AD2d 832.) The plaintiffs do not have a viable cause of action against defendant Genovese based on a cause of action for breach of the implied warranty of merchantability. (See, UCC 2-314; International Fidelity Ins. Co. v Gaco Western, Inc., 229 AD2d 471.) The plaintiffs did not cite

any cases where a retailer has been found liable for breach of warranty where he sold a counterfeit product. Moreover, there are cases which hold that while a retailer is under a duty to inspect a product for and to discover such defects as a reasonable physical inspection would disclose, a retailer need not ordinarily inspect the merchandise he sells for latent defects. (See, e.g., Naples v City of New York, 34 AD2d 577.) Thus, in a case where a customer was injured by a stopper which flew from a champagne bottle, a retailer was not liable on a cause of action for breach of warranty where the evidence established that she could not have discovered any danger by mere inspection, and she was under no legal duty to test the ability of the stopper to withstand normal pressure. (Cosgrove v Delves' Estate, 35 AD2d 730.) Even assuming that a retailer can be liable for breach of the implied warranty of merchantability where a defect is latent (see, Titlebaum v Loblaws, Inc., 75 AD2d 985), nevertheless, the plaintiffs failed to make an evidentiary showing that they can prove all of the elements of a cause of action based on breach of that warranty. "In an action based on breach of warranty, it is, of course, necessary to show not only the existence of the warranty but the fact that the warranty was broken and that the breach of the warranty was the proximate cause of the loss sustained." (Official Comment 13 to UCC 2-314.) In order to establish a claim for breach of an implied warranty, a plaintiff must show that the product used was not reasonably fit for the purposes for which it was intended and that the product was the proximate cause of his injuries. (See,

Finkelstein v Chevron Chemical Co., 60 AD2d 640.) The plaintiffs herein failed to submit proof that the bottle of shampoo they purchased was contaminated with bacteria or was otherwise defective or that any defect proximately caused an injury. (See, Finkelstein v Chevron Chemical Co., supra.) A prima facie case that a product was defective or the proximate cause of injury cannot be established merely by proving that ill effects followed plaintiff Marjorie Dreisler's use of the shampoo. (See, Finkelstein v Chevron Chemical Co., supra.) For similar reasons, the plaintiffs also failed to show that they are capable of proving a cause of action sounding in strict products liability or negligence. "[W]hether the action is pleaded in strict products liability, breach of warranty or negligence, it is a consumer's burden to show that a defect in the product was a substantial factor in causing the injury"***. (Clarke v Helene Curtis, Inc., supra, quoting Tardella v RJR Nabisco, 178 AD2d 737.) 'The cornerstone rule in products liability is that proof of mere injury furnishes no rational basis for inferring that the product was defective for its intended use.' The plaintiff must demonstrate, at a minimum, that her injuries are the direct result of the [product] applied *** and that [the product is] the sole possible cause of those injuries." (Olsovi v Salon DeBarney, 118 AD2d 639, quoting Helene Curtis Indus. v Pruitt, 385 F2d 841; Clarke v Helene Curtis, Inc., supra.) The plaintiffs herein failed to carry that burden.

The motion by defendant Quality for summary judgment dismissing the complaint against it is granted. The opponent of a motion for summary judgment has the burden of producing evidence in admissible form sufficient to show that there is an issue of fact which must be tried. (See, Alvarez v Prospect Hospital, supra.) The plaintiffs failed to raise a genuine issue of fact concerning whether there was a defect in the bogus shampoo and, if so, whether the defect was the proximate cause of an injury. (See, Clarke v Helene Curtis, Inc., supra.) The laboratory tests conducted by P&G companies showed no bacterial contamination, and the plaintiffs produced no medical evidence showing that the shampoo caused plaintiff Marjorie Deisler injury.

That branch of the cross motion by defendant Allou which is for summary judgment dismissing the complaint against it is granted. (See, Alvarez v Prospect Hospital, supra; Clarke v Helene Curtis, Inc., supra.) That branch of the cross motion by defendant Allou which is for summary judgment on its claim for indemnification against defendant Quality is denied as moot.

The plaintiffs' motion for a trial preference is denied as moot.

Settle order.

J.S.C.

6-18-02

AFFIRMATION

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

| | |
|---|---|
| MARJORIE DEISLER and RICHARD DEISLER,<br>Plaintiffs,<br>v.<br>QUALITY KING DISTRIBUTORS, INC., PROCTER & GAMBLE DISTRIBUTING COMPANY, ALLOU DISTRIBUTORS, INC., and GENOVESE DRUGS, INC.,<br>Defendants. | Index No. 014650/96<br>Hon. Allan B. Weiss, J.S.C.<br>**AFFIRMATION OF** **<u>TIMOTHY J. HELWICK</u>** |

Timothy J. Helwick, duly admitted to practice law in the State of New York, affirms under penalty of perjury:

1. I am associated with Kramer Levin Naftalis & Frankel LLP, counsel to defendant The Procter & Gamble Distributing Company ("P&G Distributing"). I respectfully submit this affirmation to demonstrate that there is good cause for settling and signing the proposed Order and Judgment outside of the normal sixty day time period.

2. In a Memorandum dated June 18, 2002 (the "June 18 Memorandum"), the Court dismissed the Complaint against all Defendants, including P&G Distributing, and denied as moot Plaintiffs' request for a trial preference. The Memorandum directed the parties to submit a "Settle order."

3. As counsel for P&G Distributing, we received notice of the June 18 Memorandum in the *New York Law Journal* on or about July 2, 2002.

4. Thereafter, our Managing Attorney's clerk made three unsuccessful attempts to obtain a copy of the June 18 Memorandum; each time, our clerk was informed by the

Office of the Clerk of the Court (the "Clerk's Office") that the June 18 Memorandum was not available. Finally, on August 21, 2002, our clerk was able to obtain a copy of the June 18 Memorandum.

5. Uniform Rules for NYS Trial Courts § 202.48(a) provides that proposed orders or judgments must be submitted for signature "within 60 days after the signing and filing of the decision directing that the order be settled or submitted." Section 202.48(b) provides that the "[f]ailure to submit the order or judgment timely shall be deemed an abandonment of the motion or action, unless for good cause shown."

6. As noted, by the time we obtained a copy of the June 18 Memorandum, the sixty day time period for submitting an order to be signed and settled had already expired. In the interim, neither Plaintiffs nor any other Defendant submitted an order for settlement.

7. After receiving a copy of the June 18 Memorandum, our Managing Attorney again inquired of the Clerk's Office as to the status of the case since the time to settle an order had already lapsed. In response to our telephone inquiries, we were told that the case had been dismissed as abandoned. At the time, this information appeared to be consistent with the June 18 Memorandum, in which Justice Weiss granted summary judgment to all Defendants, and denied Plaintiffs' motion for a trial preference as moot. Consequently, we did not pursue the matter further, under the belief that the case had been dismissed.

8. However, at my request, our Managing Clerk's Office obtained a copy of the June 18 Memorandum from the files of the Clerk's Office. The copy of the June 18 Memorandum that we obtained from the Clerk's Office bears a stamp on the bottom of the front page with the date "October 11, 2002" and a legend stating: "Motion Abandoned. Uniform Rules of the NYS Courts Section 202.48." Upon receiving this copy, we again called the Clerk's

Office and were informed that, according to their records, the entire action had been dismissed as abandoned and that the case had been removed from the Court's docket.

9. Thus, this action apparently has been dismissed as abandoned under Uniform Rule for the NYS Courts § 202.48. However, it also should have been dismissed on the merits pursuant to the June 18 Memorandum. Unfortunately, and through no fault of the litigants, we were not able to submit a settlement Order to the Court before the Clerk's Office marked the action as abandoned: the June 18 Memorandum simply was not available to the parties during the sixty-day time period. Having obtained a judgment on the merits after extensive motion practice before the Court, the Defendants should be given the opportunity to present to the Court an Order settling their respective motions by Order and Judgment of the Court.

10. Accordingly, we respectfully request that the Court allow P&G Distributing to submit for signature and settlement the annexed Order and Judgment. Under the circumstances noted above, we simply were not able to submit an Order and Judgment within the normal sixty-day period. No party will be prejudiced by this request. And given the considerable time and attention that the Court gave to the parties' motions, as reflected in the 13-page June 18 Memorandum, it is in the interest of justice that a proper settlement Order and Judgment be issued rather than having these motions marked "abandoned" as a result of an apparent clerical error.

Dated: New York, New York
January 17, 2003

Timothy J. Helwick



KL3 2236595 1

# AFFIDAVIT OF SERVICE

STATE OF NEW YORK )
: ss.:
COUNTY OF NEW YORK )

Francisco J. Cortes, being duly sworn, deposes and says:

I am not a party to the action, am over the age of eighteen and reside at 206 West 104th Street, New York, New York 10025. On January 17, 2003, I served a true copy of the within NOTICE OF SETTLEMENT OF ORDER AND JUDGMENT, ORDER AND JUDGMENT and AFFIRMATION OF TIMOTHY J. HELWICK upon the following at the following address:

Law Offices of Daniel P. Buttafuoco & Associates
144 Woodbury Road
Woodbury, New York 11797

Edwards & Angell, LLP
750 Lexington Avenue
New York, NY 10022

Peter Creedon & Associates
3 Huntington Quadrangle - Suite 102S
Melville, NY 11747

Kral, Clerkin, Redmond, Ryan, Perry & Girvan
69 East Jericho Turnpike
Mineola, NY 11501

the address designated by said attorney for that purpose, by depositing a true copy of same, enclosed in a postpaid properly addressed envelope, in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York.

Francisco J. Cortes

Sworn to before me this
17th day of January 2003

Notary Public

CLARA M. PIZZARELLO
NOTARY PUBLIC, State of New York
No. 01PI5072845
Qualified in New York County
Commission Expires Feb 10 20 03

KL3 2236986 1

Index No. 014650/96

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

---

MARJORIE DEISLER and RICHARD DEISLER,

Plaintiffs,

- against -

QUALITY KING DISTRIBUTORS, INC.,
PROCTER & GAMBLE DISTRIBUTING COMPANY,
ALLOU DISTRIBUTORS, INC., and
GENOVESE DRUGS, INC.

Defendants.

---

**NOTICE OF ORDER AND JUDGMENT,
PROPOSED ORDER AND JUDGMENT,
MEMORANDUM DECISION DATED JUNE 18, 2002 AND
AFFIRMATION OF TIMOTHY J. HELWICK**

---

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Attorneys for Defendant The Procter & Gamble Distributing Company

919 Third Avenue, New York, New York 10022
(212) 715-9100

*All communications should be referred to:*
Timothy Helwick, Esq.