**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

CASE NO. 05-21646-CIV-SEITZ/MCALILEY

WILLIAM SCHOENBAUM AND
ELAYNE STERN individually, and on
behalf of all others similarly situated,

Plaintiffs,

v.

THE PROCTER & GAMBLE COMPANY,

Defendant.

_______________________________________/

PROCTER & GAMBLE'S MEMORANDUM OF
LAW IN SUPPORT OF MOTION FOR SANCTIONS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... ii

PRELIMINARY STATEMENT .......... 1

I. FACTUAL BACKGROUND: P&G AGGRESSIVELY PURSUES COUNTERFEITERS .......... 3

II. SANCTIONS SHOULD BE IMPOSED FOR FILING FRIVOLOUS CLAIMS FOR IMPROPER PURPOSES .......... 4

III. PLAINTIFFS' COUNSEL COULD NOT HAVE REASONABLY BELIEVED IN THE VALIDITY OF CLAIMS FOR WHICH NO PRIVATE CAUSE OF ACTION EXISTS .......... 7

IV. PLAINTIFFS' COUNSEL COULD NOT HAVE REASONABLY BELIEVED IN THE VALIDITY OF THE CLAIMS BECAUSE NO DUTY EXISTS TO ADVERTISE ABOUT THE COUNTERFEIT SHAMPOO .......... 8

V. PLAINTIFFS' COUNSEL COULD NOT HAVE REASONABLY BELIEVED IN THE VALIDITY OF THE WARRANTY CLAIM BECAUSE NO WARRANTY AND NO PRIVITY EXIST .......... 9

VI. PLAINTIFFS' COUNSEL COULD NOT HAVE REASONABLY BELIEVED IN THE VALIDITY OF THE FDUTPA CLAIM BECAUSE FDUTPA DOES NOT APPLY TO PERSONAL INJURY CLAIMS .......... 10

VII. PLAINTIFFS' COUNSEL COULD NOT HAVE REASONABLY BELIEVED IN THE VALIDITY OF THE FDUTPA CLAIM BECAUSE P&G DID NOT SELL OR MANUFACTURE COUNTERFEIT PRODUCTS .......... 10

VIII. PLAINTIFFS' COUNSEL COULD NOT HAVE REASONABLY BELIEVED IN THE VALIDITY OF ANY CAUSE OF ACTION BECAUSE NO PROXIMATE CAUSE EXISTS .......... 11

IX. PLAINTIFFS' COUNSEL COULD NOT HAVE REASONABLY BELIEVED IN THE VALIDITY OF ANY CAUSE OF ACTION BECAUSE NO PRESENT INJURY EXISTS .......... 12

CONCLUSION .......... 13

## TABLE OF AUTHORITIES

**Cases** **Page**

*Anderson v. Smithfield Foods, Inc.*, 207 F. Supp. 2d 1358 (M.D. Fla. 2002), *aff'd*, 353 F.3d 912 (11th Cir. 2003) .......... 11

*Barnes v. Burger King Corp.*, 932 F. Supp. 1420 (S.D. Fla. 1996) .......... 8

*Bruner v. Anheuser-Busch, Inc.*, 153 F. Supp. 2d 1358 (S.D. Fla. 2001), *aff'd*, 31 Fed. Appx. 932 (11th Cir. Fla. 2002) .......... 11

*Corroon v. Reeve*, 258 F.3d 86 (2d Cir. 2001) .......... 6

*Fagan v. Amerisourcebergen Corp.*, 356 F. Supp. 2d 198 (E.D.N.Y. 2004) .......... 8

*Footman v. Cheung*, 341 F. Supp. 2d 1218 (M.D. Fla. 2004), *aff'd*, No. 04-16054, 2005 WL 1253884 (11th Cir. May 27, 2005) .......... 6

*Fulton v. Hecht*, 580 F.2d 1243 (5th Cir. 1978), *cert. denied*, 440 U.S. 981 (1979) .......... 7

*Haun v. Don Mealy Imports, Inc.*, 285 F. Supp. 2d 1297 (M.D. Fla. 2003) .......... 7

*Himes v. Brown & Co. Sec. Corp.*, 518 So. 2d 937 (Fla. 3d DCA 1987) .......... 11

*Holloway v. Bristol-Myers Corp.*, 485 F.2d 986 (D.C. Cir. 1973) .......... 7

*Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168 (11th Cir. 1985) .......... 7

*Kapco Mfg. Co. v. C&O Enters., Inc.*, 886 F.2d 1485 (7th Cir. 1989) .......... 5

*K.M. v. Publix Super Markets, Inc.*, 895 So. 2d 1114 (Fla. 4th DCA 2005) .......... 8

*Lewis v. Casey*, 518 U.S. 343 (1996) .......... 12

*Massengale v. Ray*, 267 F.3d 1298 (11th Cir. 2001) .......... 4

*National Alcoholism Programs/Cooper City, Fla., Inc. v. Palm Springs Hosp. Employee Benefit Plan*, 825 F. Supp. 299 (S.D. Fla. 1993) .......... 11

*Merrill Lynch Bus. Fin. Servs., Inc. v. Performance Mach. Sys. U.S.A., Inc.*, No. 04-60861-Civ-Martinez, 2005 WL 975773 (S.D. Fla. Mar. 4, 2005) .......... 10

*O'Shea v. Littleton*, 414 U.S. 488 (1974) .......... 12

*Peterson v. BMI Refractories*, 124 F.3d 1386 (11th Cir. 1997) .......... 6

*Riccard v. Prudential Ins. Co.*, 307 F.3d 1277 (11th Cir. 2002) ....................5

*Rousseff v. E.F. Hutton Co., Inc.*, 843 F.2d 1326 (11th Cir. 1988) ....................11

*Shibata v. Lim*, 133 F. Supp. 2d 1311 (M.D. Fla. 2000)....................10

*T.W.M. v. Am. Med. Sys., Inc.*, 886 F. Supp. 842 (N.D. Fla. 1995) ....................9

*The Procter & Gamble Co. v. Quality King Distrib., Inc.*, 974 F. Supp. 190 (E.D.N.Y. 1997) ....................9

*United States v. Cochran*, 109 F.3d 660 (10th Cir. 1997) ....................8

*United States v. Milam*, 855 F.2d 739 (11th Cir. 1988)....................5

*Van Berkel v. Fox Farm & Road Machinery*, 581 F. Supp. 1248 (D.C. Minn. 1984)....................6

*Worldwide Primates, Inc. v. McGreal*, 26 F.3d 1089 (11th Cir. 1994) ....................5

*Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252 (11th Cir. 1996) ....................4

**STATUTES**

15 U.S.C. § 45....................7

15 U.S.C. § 52 ....................7

28 U.S.C. § 1927....................1

Fed. R. Civ. P. 11 ....................5

Fla. Stat. § 501.212 ....................10

**MISCELLANEOUS**

Dobbs, *The Law of Torts* § 481 (2001)....................4

Gregory P. Joseph, *Sanctions: The Federal Law of Litigation Abuse* §§ 14(A), 23(A) (3d ed. 1994)....................6, 7 n.2

4 *McCarthy on Trademarks & Unfair Competition* § 25:16.1 (4th ed. 2005)....................2

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

CASE NO. 05-21646-CIV-SEITZ/MCALILEY

WILLIAM SCHOENBAUM AND
ELAYNE STERN individually, and on
behalf of all others similarly situated,

Plaintiffs,

v.

THE PROCTER[1] & GAMBLE COMPANY,

Defendant.
_____________________________________/

PROCTER & GAMBLE'S MEMORANDUM OF
LAW IN SUPPORT OF MOTION FOR SANCTIONS

Defendant The Procter & Gamble Company ("P&G") files this memorandum of law in support of its motion for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1927.

PRELIMINARY STATEMENT

Only one reasonable explanation exists for why the attorney for a suspected counterfeiter commenced this case against the manufacturer of authentic shampoo – a desire to retaliate against P&G. One of the lawyers representing the plaintiffs in this action, Michael Miller, is also the lawyer for Gary Gruenberg, whom P&G has sued in New York for manufacturing and distributing the counterfeit products. In short, this case presents the Court with the lawyer who is vigorously defending a counterfeiter in the anti-counterfeiting action commenced by P&G in New York, commencing a purported class action in Florida seeking to hold P&G liable for the

---

[1] Plaintiffs misspelled "Procter" in the Complaint. P&G spells it correctly.

crimes committed by his other client. Instead of suing the counterfeiters who manufactured, distributed, and sold the counterfeit Head & Shoulders and counterfeit Pantene, the purported class action plaintiffs have sued P&G, a party that had nothing to do with the counterfeiting and has been aggressively pursuing the suspected counterfeiters – including attorney Miller's other client, Mr. Gruenberg.

Sanctions should be imposed against plaintiffs' counsel because each cause of action in the Complaint is frivolous. As P&G's motion to dismiss makes clear, no legal research could have been performed before the Complaint was filed or the research would have shown that no cause of action exists. Worse, plaintiffs' counsel's representation of one of the counterfeiters suggests, at a minimum, that the Complaint was filed for improper purposes.

Thus, this Complaint presents a textbook example for sanctions under Rule 11 and 28 U.S.C. § 1927. The Complaint is frivolous and appears to have been filed for the improper purposes of deterring P&G from pursuing its anti-counterfeiting action; of gaining some advantage in P&G's anti-counterfeiting case by putting P&G on the defensive; of harassing and annoying P&G; and – inevitably – of causing P&G to incur needless legal fees. Plaintiffs' counsel must be held accountable.

P&G is a *victim* of the crime of counterfeiting – a scourge that Congress has responded to by strengthening the laws against counterfeiting as recently as 1996. *See* 4 *McCarthy on Trademarks & Unfair Competition* § 25:16.1 (4th ed. 2005) ("Alarmed by an increasing wave of counterfeit activity, Congress in 1996 increased penalties and facilitated procedures for the anti-counterfeiting battle."). Plaintiffs turn this Congressional mandate on its head by basing their complaint *entirely* upon the anti-counterfeiting action commenced by P&G. (*See* Compl. ¶¶ 12-18.) P&G has no liability for the acts of the criminals who counterfeit Head & Shoulders and

Pantene. Minimal research before filing would have revealed the numerous defects of the Complaint: that no private cause of action exists for violations of the Federal Trade Commission Act; that no duty requires a manufacturer to warn consumers about counterfeit products illegally manufactured by someone else; that no warranty exists on counterfeit products from a manufacturer that manufactures authentic products, but that does not manufacture, sell or distribute the counterfeit products; that no potential harm exists to the public (*from P&G*) and no cause of action exists under the Florida Deceptive and Unfair Trade Practices Act; that no standing exists for mere potential injury; and that no proximate cause – a required element for all of the asserted claims – could exist under the allegations.

## I. FACTUAL BACKGROUND: P&G AGGRESSIVELY PURSUES COUNTERFEITERS

In July 2004, P&G brought an anti-counterfeiting action in the Eastern District of New York captioned *The Procter & Gamble Company v. Xetal, Inc., et al.*, 04 Civ 2820 (DRH) (the "New York Action"). The New York Action complaint alleges, among other things, that Gary Gruenberg and his brother-in-law Fred Harrick manufacture, sell and distribute counterfeit Pantene and counterfeit Head & Shoulders. (Decl. of Geoffrey Potter, Esq. in Supp. of Def's Mot. for Sanctions, Ex. C.) Michael Miller, one of the lawyers for the plaintiffs in this action, also represents Gary Gruenberg. (*Id.* ¶ 2, Ex. A.)

In the New York Action, P&G sought and obtained emergency relief in the form of expedited discovery, preliminary injunctions and a seizure order against Gruenberg. (*Id.* Ex. D.) Pursuant to the seizure order, law enforcement authorities searched Gruenberg's Florida home and his computers for evidence of counterfeiting activity. (*Id.* ¶ 6.) In addition, Panamanian authorities searched Harrick's places of business in Panama for evidence of counterfeiting activity. (*Id.* ¶ 7.)

The information obtained from the seizures in Panama and Florida as well as information obtained from dozens of depositions, numerous interviews and the review of more than 50,000 pages of documents obtained from parties and non-parties show (while still subject to proof at trial) that Gary Gruenberg and Fred Harrick worked together to manufacture and distribute the counterfeit products for which the purported class – represented by Gruenberg's lawyer – now seeks to punish P&G. (*Id.* ¶ 8.)

II. SANCTIONS SHOULD BE IMPOSED FOR FILING FRIVOLOUS CLAIMS FOR IMPROPER PURPOSES

"[U]nder Rule 11, an attorney must make a reasonable inquiry into both the legal and factual basis of a claim prior to filing suit." *Worldwide Primates, Inc. v. McGreal,* 87 F.3d 1252, 1255 (11th Cir. 1996) ("*Worldwide Primates II*") (affirming sanctions against lawyer; litigant also was assessed sanctions). "Rule 11 sanctions are proper: '(1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) when the party files a pleading in bad faith or for an improper purpose.'" *Id.* at 1254 (quoting *Jones v. International Riding Helmets, Ltd.*, 49 F.3d 692, 694 (11th Cir. 1995)). *See also Massengale v. Ray*, 267 F.3d 1298, 1301 (11th Cir. 2001) (citing same standards in determining Rule 11 was violated when the case did not have factual or legal support, but reversing the sanction amount).

In considering whether to impose sanctions, the Court must first determine "whether the party's claims are objectively frivolous – in view of the facts or law – and then, if they are, whether the person who signed the pleadings should have been aware that they were frivolous; that is, whether he should have been aware had he made a reasonable inquiry." *Worldwide Primates II*, 87 F.3d at 1254. If a plaintiff "could not reasonably have believed, as required by

Rule 11, that its claim was well grounded in fact or law," sanctions should be imposed. *Worldwide Primates, Inc. v. McGreal*, 26 F.3d 1089, 1093 (11th Cir. 1994) ("*Worldwide Primates I*") (reversing denial of sanctions against lawyer and litigant).

"[W]hen parties attempt to pursue civil litigation with legal theories apparently foreclosed by statute and precedent, they must do so with candor toward the court and with a sense of whether their argument is appropriate and reasonable." *United States v. Milam*, 855 F.2d 739, 745 (11th Cir. 1988) (affirming sanctions). In this case, sanctions are warranted because the Complaint asserts causes of action that basic research reveals are foreclosed by statute and precedent. *See id.* ("Basic research into the common law of contracts, however, would have demonstrated to the appellants the unanimous conclusion of the commentators . . . .").

Plaintiffs' counsel could not have reasonably believed that plaintiffs possess a single valid claim against P&G under any legal theory. In short, if plaintiffs' counsel had made any effort, as Rule 11 requires, "to 'stop-and-think' before . . . making [the] legal . . . contentions" in the Complaint, this action never would have been brought. Fed. R. Civ. P. 11 Advisory Committee Note to 1993 amendments; *see Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1294 (11th Cir. 2002) ("Sanctions are warranted when a party exhibits a 'deliberate indifference to obvious facts' . . . .") (citation omitted).

This Court may impose sanctions under 28 U.S.C. § 1927 against an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously." "'If a lawyer pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the conduct is objectively unreasonable and vexatious'" within the meaning of 28 U.S.C. § 1927. *Kapco Mfg. Co. v. C&O Enters., Inc.*, 886 F.2d 1485, 1491 (7th Cir. 1989)

(quoting *In re TCI*, 769 F.2d 441, 445 (7th Cir. 1985)). *See also Van Berkel v. Fox Farm & Road Machinery*, 581 F. Supp. 1248, 1251 (D.C. Minn. 1984) (imposing costs, expenses, and attorney fees because the lawyer failed to dismiss once the lawyer learned the claims were barred). The term "vexatious" means '"without reasonable or probable cause or excuse.'" *Footman v. Cheung*, 341 F. Supp. 2d 1218, 1222-23 (M.D. Fla. 2004) (finding of bad faith under § 1927 warranted where an attorney "knowingly or recklessly raises a frivolous argument") (quoting BLACK'S LAW DICTIONARY 1559 (7th ed. 1999)), *aff'd*, No. 04-16054, 2005 WL 1253884 (11th Cir. May 27, 2005). If a lawyer's conduct "results in proceedings that would not have been conducted otherwise," then the conduct "multiplies the proceedings" within the meaning of 28 U.S.C. § 1927. *Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997) (reversing sanctions because proceedings would have had to have occurred in the absence of the vexatious behavior). In this case, as explained below and in P&G's memorandum of law in support of dismissal, the filing of the Complaint was vexatious and unreasonable because no reasonable basis existed for the filing of the Complaint. If the Complaint would not have been filed, then no proceedings would have been necessary and P&G would not have been required to spend time and money defending itself. Therefore, 28 U.S.C. § 1927 provides an alternate basis on which this Court can impose sanctions against the plaintiffs' attorneys. *See generally* Gregory P. Joseph, *Sanctions: The Federal Law of Litigation Abuse* §§ 14(A)(1), 23(A)(2) (3d ed. 1994) (discussing the availability of Rule 11 and § 1927 sanctions for filing a frivolous complaint).

As discussed below and in P&G's motion to dismiss, no attorney could reasonably believe that the Complaint states a meritorious claim. As Mr. Miller's role as plaintiffs' counsel in this case confirms, this lawsuit is a vexatious tactic crafted to retaliate against P&G for its

pursuit of those responsible for the counterfeit P&G products.[2] This action does not, and cannot, serve the interests of the plaintiffs or the public. If the plaintiffs were injured – an extremely unlikely scenario from the face of the Complaint – their injury was caused by the counterfeiters, not by P&G, the manufacturer of safe, authentic Head & Shoulders and Pantene. Plaintiffs' counsel should be sanctioned for the frivolous collateral attack on P&G, the victim of the counterfeiting.

## III. PLAINTIFFS' COUNSEL COULD NOT HAVE REASONABLY BELIEVED IN THE VALIDITY OF CLAIMS FOR WHICH NO PRIVATE CAUSE OF ACTION EXISTS

Plaintiffs allege violations of 15 U.S.C. § 45 (first cause of action) and 15 U.S.C. § 52 (sixth cause of action). The authorities are unanimous that no private cause of action exists for a violation of either 15 U.S.C. § 45 or 15 U.S.C. § 52. *See, e.g.*, *Jeter v. Credit Bureau*, 760 F.2d 1168, 1174 n.5 (11th Cir. 1985) (FTC Act does not provide private cause of action); *Fulton v. Hecht*, 580 F.2d 1243, 1248 n.2 (5th Cir. 1978) ("no private cause of action for violation of the FTC Act"); *Holloway v. Bristol-Myers Corp.*, 485 F.2d 986, 988-89 (D.C. Cir. 1973) (affirming dismissal because no private cause of action exists for 15 U.S.C. §§ 45, 52 and 54); *Haun v. Don Mealy Imports, Inc.*, 285 F. Supp. 2d 1297, 1306-07 (M.D. Fla. 2003) (FTC Act claims dismissed for failure to state a claim because no private cause of action exists). Because the authorities are clear that no private cause of action exists, Rule 11 sanctions should be imposed.

---

[2] The threatened abuse of the class action device particularly warrants sanction here. *See, e.g.*, *Corroon v. Reeve*, 258 F.3d 86, 89 (2d Cir. 2001) (affirming district court sanctions based on the conclusion that class counsel was "either pursuing meritless litigation in order to force a settlement with respect to attorneys' fees – precisely the behavior the securities laws and Rule 11 abhor – or, equally abhorrent, Lead Counsel was willing to jettison the meritorious claims of its clients in order to obtain attorneys' fees"); Gregory P. Joseph, *Sanctions: The Federal Law of Litigation Abuse* § 14(A)(8).

*E.g.*, *Milam*, 855 F.2d at 744 (sanctions imposed because "[b]asic research . . . would have demonstrated" the law).

IV. PLAINTIFFS' COUNSEL COULD NOT HAVE REASONABLY BELIEVED IN THE VALIDITY OF THE CLAIMS BECAUSE NO DUTY EXISTS TO ADVERTISE ABOUT THE COUNTERFEIT SHAMPOO

Each of plaintiffs' claims for medical monitoring (second cause of action), negligence (third cause of action), fraud (fourth cause of action), RICO (seventh cause of action) and the state consumer protection laws (eighth cause of action) is based on an alleged duty that P&G should have conducted an advertising campaign to warn plaintiffs about the counterfeit Head & Shoulders and counterfeit Pantene.

A minimal amount of research by plaintiffs' counsel would have resulted in the discovery of the general rule that a manufacturer such as P&G does not have a duty to warn consumers about third parties' illegal acts. *E.g.*, *K.M. v. Publix Super Markets, Inc.*, 895 So. 2d 1114, 1117 (Fla. 4th DCA 2005) (affirming dismissal of negligence cause of action based on the "general rule" where allegation was that defendant should have warned plaintiff of the potential danger of a third party). *See also United States v. Cochran*, 109 F.3d 660, 665 (10th Cir. 1997) (reversing wire fraud conviction based on a failure to disclose because no clear requirement that disclosure was required); *Barnes v. Burger King Corp.*, 932 F. Supp. 1420, 1429 (S.D. Fla. 1996) (granting summary judgment because no fiduciary or other confidential relationship existed, so no duty to disclose existed); Dobbs, *The Law of Torts* § 481 at 1375 (West 2001) (describing the "traditional rule" that someone like P&G "is not ordinarily obliged to make affirmative revelations"). In addition, a minimal amount of basic research would have revealed to plaintiffs' counsel that a manufacturer such as P&G does not have a duty specifically to conduct an advertising campaign to warn about counterfeit products. *E.g.*, *Fagan v. Amerisourcebergen*

*Corp.*, 356 F. Supp. 2d 198, 207 (E.D.N.Y. 2004) (dismissing negligence claim against manufacturer brought by plaintiff injured by taking counterfeit drugs).

Because a minimal amount of research would have identified that P&G did not have a legal duty to conduct an advertising campaign to warn the public about the counterfeiters' illegal actions and because claims two, three, four, seven and eight rely upon the existence of such a duty, Rule 11 sanctions should be imposed. *E.g.*, *Milam*, 855 F.2d at 744 (sanctions imposed because "[b]asic research . . . would have demonstrated" the law).

## V. PLAINTIFFS' COUNSEL COULD NOT HAVE REASONABLY BELIEVED IN THE VALIDITY OF THE WARRANTY CLAIM BECAUSE NO WARRANTY AND NO PRIVITY EXIST

A minimal amount of research would have revealed that no warranty cause of action (fifth cause of action) could exist against a manufacturer based on the purchase of counterfeit goods. *E.g.*, *The Procter & Gamble Co. v. Quality King Distrib., Inc.*, 974 F. Supp. 190, 199-200 (E.D.N.Y. 1997) (granting P&G's motion to dismiss breach of warranty counterclaim related to counterfeit Head & Shoulders). P&G did not breach a warranty with respect to the counterfeit products because "[n]o warranties were made by the P&G companies with regard to the counterfeit Head & Shoulders shampoo" or the counterfeit Pantene shampoo. *P&G*, 974 F. Supp. at 200.

Further, a minimal amount of research would have disclosed that a "plaintiff must be in privity of contract with the defendant" in an implied warranty case. *T.W.M. v. Am. Med. Sys., Inc.*, 886 F. Supp. 842, 844 (N.D. Fla. 1995) (dismissing breach of implied warranty because no privity existed). Although plaintiffs' counsel apparently recognized that privity had to exist since the Complaint mentions it, the same minimal research would have shown that "[a] plaintiff who purchases a product, but does not buy it directly from the defendant, is not in privity with

that defendant." *T.W.M.*, 886 F. Supp. at 844. The definition of privity should have alerted plaintiffs' counsel to the inability of a warranty claim to be sustained.

Because a minimal amount of research would have shown the unanimous law on the breach of warranty cause of action, Rule 11 sanctions should be imposed. *E.g.*, *Milam*, 855 F.2d at 744 (sanctions imposed because "[b]asic research . . . would have demonstrated" the law).

## VI. PLAINTIFFS' COUNSEL COULD NOT HAVE REASONABLY BELIEVED IN THE VALIDITY OF THE FDUTPA CLAIM BECAUSE FDUTPA DOES NOT APPLY TO PERSONAL INJURY CLAIMS

A minimal amount of research would have revealed that FDUTPA by its terms "does not apply to: . . . A claim for personal injury or death or a claim for property other than the property that is the subject of the consumer transaction." Fla. Stat. § 501.212(3). Because a minimal amount of research would have shown that FDUTPA does not apply to personal injury causes of action such as the one alleged in this case, Rule 11 sanctions should be imposed. *E.g.*, *Milam*, 855 F.2d at 744 (sanctions imposed because "[b]asic research . . . would have demonstrated" the law).

## VII. PLAINTIFFS' COUNSEL COULD NOT HAVE REASONABLY BELIEVED IN THE VALIDITY OF THE FDUTPA CLAIM BECAUSE P&G DID NOT SELL OR MANUFACTURE COUNTERFEIT PRODUCTS

A minimal amount of research would have shown that a deceptive trade cause of action cannot be sustained when the defendant "P&G did not manufacture, bottle, label, distribute, sell, advertise or otherwise authorize the production of the counterfeit Head & Shoulders" or counterfeit Pantene. *The Procter & Gamble Company*, 974 F. Supp. at 201 (dismissing deceptive trade action under New York law). *See also Shibata v. Lim*, 133 F. Supp. 2d 1311, 1317 (M.D. Fla. 2000) (dismissing FDUTPA claims because "the consumer must allege sufficient facts to show that the consumer has been actually aggrieved by the unfair or deceptive act committed by the *seller* in the course of trade or commerce"); *Merrill Lynch Bus. Fin. Servs.*,

*Inc. v. Performance Mach. Sys. U.S.A., Inc.*, No. 04-60861-Civ-Martinez, 2005 WL 975773, *9 (S.D. Fla. Mar. 4, 2005) (dismissing FDUTPA claim because "a consumer must allege sufficient facts to show he was actually aggrieved by an unfair or deceptive act committed by the *seller*"); *Nat'l Alcoholism Programs/Cooper City, Fla., Inc. v. Palm Springs Hosp. Employee Benefit Plan*, 825 F. Supp. 299, 302 (S.D. Fla. 1993) (FDUTPA is "[d]esigned to protect consumers from suppliers who commit deceptive trade practices").

Because a minimal amount of research would have shown that the consumer protection cause of action does not apply when the defendant did not have anything to do with the products that allegedly caused harm, Rule 11 sanctions should be imposed. *E.g.*, *Milam*, 855 F.2d at 744 (sanctions imposed because "[b]asic research . . . would have demonstrated" the law).

## VIII. PLAINTIFFS' COUNSEL COULD NOT HAVE REASONABLY BELIEVED IN THE VALIDITY OF ANY CAUSE OF ACTION BECAUSE NO PROXIMATE CAUSE EXISTS

A minimal amount of research would have shown that each of the causes of action alleged in the Complaint requires a showing of proximate cause. *See Anderson v. Smithfield Foods, Inc.*, 207 F. Supp. 2d 1358, 1364 (M.D. Fla. 2002) (dismissing RICO claim because alleged acts did not proximately cause alleged injuries), *aff'd*, 353 F.3d 912 (11th Cir. 2003); *Bruner v. Anheuser-Busch, Inc.*, 153 F. Supp. 2d 1358, 1361 (S.D. Fla. 2001) (dismissing breach of warranty, negligence, and fraudulent advertising claims because proximate cause was not alleged), *aff'd*, 31 Fed. Appx. 932 (11th Cir. 2002); *Himes v. Brown & Co. Sec. Corp.*, 518 So. 2d 937, 938 (Fla. 3d DCA 1987) (affirming judgment because no proximate cause was shown on FDUTPA, fraud, or negligence).

Further, a minimal amount of research would have shown that proximate cause does not exist when the injury – in this case an alleged increase in medical risk – was not caused by the allegedly improper advertising that allegedly caused plaintiffs to purchase shampoo, but was

instead proximately caused by the counterfeiters' manufacture and distribution of potentially harmful shampoo. *E.g.*, *Rousseff v. E.F. Hutton Co., Inc.*, 843 F.2d 1326, 1329 & n.2 (11th Cir. 1988) (reversing fraud judgment even though the misrepresentation caused the plaintiff to buy, plaintiff had to prove misrepresentation itself caused the injury); *Himes*, 518 So. 2d at 938 (no proximate cause shown even though false advertising existed because the injuries were not caused by the false advertising itself).

The alleged increased medical risk was caused by the manufacture and distribution of shampoo by the counterfeiters, not P&G. The increased medical risk was not caused by any advertising or lack of advertising. An analysis of the law with the facts would have shown plaintiffs' counsel that the proximate cause of any increased medical risk was caused by the manufacture and distribution of potentially harmful counterfeit shampoo and not by the advertising about legitimate shampoo. Because a minimal amount of research and application of that research to the facts of this case would have shown that no proximate cause exists, Rule 11 sanctions should be imposed. *E.g.*, *Milam*, 855 F.2d at 744 (sanctions imposed because "[b]asic research . . . would have demonstrated" the law).

## IX. PLAINTIFFS' COUNSEL COULD NOT HAVE REASONABLY BELIEVED IN THE VALIDITY OF ANY CAUSE OF ACTION BECAUSE NO PRESENT INJURY EXISTS

A minimal amount of research would have shown that a complaint cannot survive if the named plaintiffs cannot allege injury. *See Lewis v. Casey*, 518 U.S. 343, 349 (1996) (fact that action brought as class action does not avoid basic requirement that plaintiffs must allege that they personally have been injured by a defendant); *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) (only *potential injury* to the class representative is insufficient).

In this case, the named plaintiffs only identify an increased risk of injury. They have not identified any actual injury. A minimal amount of research would have identified that the

potential injury instead of actual injury is not enough to survive a motion to dismiss. Because a minimal amount of research and application of that research to the facts of this case would have shown that the lack of actual injury instead of potential injury cannot sustain a cause of action, Rule 11 sanctions should be imposed. *E.g.*, *Milam*, 855 F.2d at 744 (sanctions imposed because "[b]asic research . . . would have demonstrated" the law).

CONCLUSION

For the foregoing reasons, P&G respectfully requests that the Court impose appropriate sanctions against plaintiffs' counsel, pursuant to Rule 11 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1927, including P&G's reasonable attorneys' fees and the costs of this action, and any other relief the Court deems appropriate.

Respectfully submitted,

STEARNS WEAVER MILLER
WEISSLER ALHADEFF & SITTERSON, P.A.
Suite 2200 Museum Tower
150 West Flagler Street
Miami, Florida 33130
Telephone: 305-789-3200 - Telephone
Telecopier: 305-789-3395 - Facsimile

By: ______________________
JAY B. SHAPIRO
Florida Bar No. 0776361
jshapiro@swmwas.com
ADAM M. SCHACHTER
Florida Bar No. 0647101
aschachter@swmwas.com

Attorneys for Defendant
The Procter & Gamble Company

Of Counsel:

Fulbright & Jaworski LLP
Mark N. Mutterperl
Mark A. Robertson
Jenifer S. McIntosh
666 Fifth Avenue
New York, New York 10103-3198
Telephone: 212-318-3000
Telecopier: 212-318-3400

Kramer Levin Naftalis & Frankel LLP
Geoffrey Potter
Yehudis Lewis
A. Owen Glist
1177 Avenue of the Americas
New York, New York 10036
Telephone: 212-715-9402
Telecopier: 212-715-8402

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument was served by hand, on the 4 day of August, 2005 to:

Matthew P. Slingbaum, Esq.
Gregory E. Schwartz, Esq.
Schwartz Zweben & Slingbaum
3876 Sheridan Street
Hollywood, Florida 33021

Michael R. Miller, Esq.
801 NE 167th Street
Second Floor
North Miami Beach, FL 33162

Adam M. Schachter