FILED by EG D.C.
ELECTRONIC
Aug 25 2005
CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. · MIAMI

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

CASE NO. 05-21646-CIV-SEITZ/McALILEY

WILLIAM SCHOENBAUM AND
ELAYNE STERN individually, and on
behalf of all others similarly situated,

Plaintiffs,

v.

THE PROCTER & GAMBLE COMPANY,

Defendant.
_______________________________________/

Plaintiffs, WILLIAM SCHOENBAUM and ELAYNE STERN, individually, and on behalf of all others similarly situated, by and through their undersigned counsel, for this, their Class Action Complaint, allege the claims set forth herein. Plaintiffs' claims as to themselves and their own actions are based upon their personal knowledge. All other allegations are based upon information and belief pursuant to the investigations of counsel. Based upon such investigation, Plaintiffs believe that substantial evidentiary support exists for the allegations herein or that such allegations are likely to have evidentiary support after a reasonable opportunity for further investigation and/or discovery.

**NATURE OF THE ACTION**

1. Defendant is a manufacturer and marketer of the extremely successful hair care products, Head & Shoulders and Pantene. Head & Shoulders is indicated for treatment of dandruff and other fungal problems.

2. As will be explained in greater detail herein, Defendant has known for a substantial period of time that a significant amount of counterfeit Head & Shoulders and Pantene (hereinafter sometimes collectively referred to as the "products") which are of inferior quality, contaminated and may cause injuries to users have been placed in the stream of commerce. Despite its knowledge of same, Defendant has failed to notify the public, notify the appropriate governmental agencies or timely see to the recall or the discontinuation of the counterfeiting of its products.

3. As discussed below, Defendant has engaged in extensive advertising, marketing, publicity, distribution and sales campaigns promoting the supposed quality and safety of Head & Shoulders and Pantene, directing those advertising, marketing, publicity, distribution and sales campaigns at prospective purchasers and users of Head & Shoulders and Pantene while knowing that purchasers were likely to be purchasing the counterfeit products which were of inferior quality, contaminated and may cause injuries.

4. Defendant knew, or had reason to know, that the Head & Shoulders and Pantene products being sold and purchased by the public were counterfeit, contaminated, inferior and may cause injury to users, yet they concealed from the general public, purchasers and users of the products this information. Moreover, they purposely conducted an advertising campaign alleging the superior quality of their products and encouraging the public to purchase same while knowing the inferior quality and the likelihood that the public would purchase the version the their product that was counterfeit which was inferior, contaminated and posed health risks..

5. Plaintiffs seek, on behalf of themselves and members of the Class, injunctive relief, equitable relief, medical monitoring, monetary damages, statutory, actual, and punitive damages, to redress Defendant's unlawful practices and acts.

6. Plaintiffs and the Class have presently suffered an injury by the deception committed by P & G which did not allow them the right to make an informed choice concerning the purchase of their Hair care products in addition to monetary injuries, and medical injuries that they are presently suffering or may suffer in the future due to the inferior quality and heath risks posed by the counterfeited products actually purchased by the public as a result of Defendant's proactive advertising regarding the superior quality of the products and failure to warn the public of the inferior quality and health risks of the counterfeit and contaminated products.

## JURISDICTION AND VENUE

6. This Court has jurisdiction pursuant to 18 U.S.C § 1962 and 28 U.S.C. §§ 1331, 1367 and general principles of ancillary and pendent jurisdiction.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendant provides good and services to Plaintiffs and Class members located in this district, and conduct substantial business in this district. Moreover, Plaintiffs reside in the district and have been subjected to the wrongs complained of herein and suffered injury in the district.

8. In connection with the acts, transactions and conduct alleged herein, Defendant used the means and instrumentalities of interstate commerce, including the United States mail.

## PARTIES

9. Plaintiff WILLIAM SCHOENBAUM, is and was at all times relevant hereto, a resident of Miami-Dade County, State of Florida, and is otherwise *sui juris.* Plaintiff was at all material times hereto a user of Head and Shoulders hair care products.

10. Plaintiff ELAYNE STERN, is and was at all times relevant hereto, a resident of Miami-Dade County, State of Florida and is otherwise *sui juris.* Plaintiff was at all material times hereto a user of Pantene hair care products.

11. Defendant PROCTOR AND GAMBLE (hereinafter referred to as "P & G") is a foreign corporation, with its principal place of business located in Cincinnati, Ohio.

**FACTUAL ALLEGATIONS**

12. Defendant P & G has brought suit in the United States District Court, Eastern District of New York against various defendants for trademark infringement, among other things, in relation to counterfeiting and the fraudulent sale of its Pantene and Head & Shoulders line of products *(Procter & Gamble v. Xetal, Inc., et al., 04-Civ.2820 (DRH)).*

13. The Defendant P & G "is a distributor of world-renowned high-quality consumer products sold under various registered trademarks, including 'Pantene' and 'Head & Shoulders.' These trademarks have become extremely valuable as a result of Proctor & Gamble's substantial marketing efforts and the tremendous public acceptance of products bearing those distinctive marks. For example, since 1999, Proctor & Gamble has spent more than $980 million dollars advertising Pantene and has achieved sales of that product well in excess of $3 billion dollars. Similarly, during that same period, Proctor & Gamble has spent more than $286 million dollars advertising Head & Shoulders and has achieved sales of that product well in excess of $1 billion dollars." *Id.* at 2.

14. "Proctor & Gamble has spent and continues to spend large sums of money marketing and selling in interstate commerce Pantene and Head & Shoulders shampoo packaged in high-quality bottles bearing its trademarks and trade dress. As a result of the extensive advertising of Pantene and Head & Shoulders in connection with the Proctor & Gamble trademarks…Pantene and Head & Shoulders…is now recognized by the public and in the trade

as originating from a single source, Proctor & Gamble." *Id.* at 7.

15. "Proctor & Gamble has engaged and continues to engage in interstate activities designed to promote Pantene and Head & Shoulders and the business and goodwill associated with each of its trademarks and to expand the use and reputation of its trademarks, trade dress, logos and property in the state of New York and throughout the United States." Id.

16. Defendant P & G has invested a substantial sum of money into promoting its Pantene and Head & Shoulders line of products. Defendant P & G has done so, however, to the detriment of the consuming public by, among other things; being aware of, yet not notifying consumers that its products were being counterfeited, that the counterfeit products were being sold at retailers throughout America, and that the counterfeit products were of inferior quality, contaminated and may cause injuries to users. The Defendant did not alert consumers to the counterfeiting of its product because that would potentially have caused a reduction in the sales of its products and concomitantly a loss of investment capital. Even more egregious, Defendant has continued to proactively promote the alleged quality of their hair care products and encourage the public to purchase same while knowing that counterfeit products of inferior quality and which were contaminated and posed health risks were being purchased by consumers in America and were likely to be purchased by consumers.

17. Defendant acquiesced in the fraud being perpetrated against consumers and, in essence, became an accomplice by deliberately failing to notify the consuming public who had no way of knowing of the deception that there were inferior counterfeit and contaminated versions of its Pantene and Head & Shoulders products which may cause injury being sold as genuine Pantene and Head & Shoulders products and by continuing to proactively advertise and affirm the quality of their products while knowing that it was likely that the public would purchase the inferior and dangerous counterfeit and contaminated products.

18. Defendant, as manufacturer of this product, had built a relationship of trust and Plaintiffs and the Class relied on that relationship of trust and depended on P&G. Defendant had an obligation to the consuming public to either notify the public that inferior and contaminated counterfeit products bearing the name of Defendant's products were being sold and that those products were not genuine products and could cause injuries to consumers when used or, at a minimum, to cease from proactively affirming the quality of its products and encouraging the public to purchase same when it knew that the public was likely to purchase the inferior, contaminated and dangerous counterfeit products. The Defendant's conduct was deceptive and fraudulent in affirmatively promoting the superior quality of their products and encouraging the public to purchase same when P&G knew that the public was likely to purchase the counterfeit products which P&G knew was in fact inferior and dangerous.

## CLASS ACTION ALLEGATIONS

19. Plaintiffs bring this action on behalf of themselves and all other persons similarly situated, who have been harmed by the Defendant's conduct, as alleged herein -- *i.e.*, (a) all persons who purchased and/or used either Head & Shoulders products or Pantene products (the "Class") on or after May 3, 2004. Excluded from the Class are Defendant and their officers, directors, management and employees, subsidiaries or affiliates. This action is maintainable as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs have satisfied FRCP 23 (a) (1),(2),(3),(4) and FRCP 23 (b) (1), (2) and (3). Additionally, Plaintiffs bring this action on behalf a subclass defined as: (b) all persons who purchased and/or used either Head & Shoulders products or Pantene products and who have suffered or may suffer in the future medical injuries.

20. Rule 23 (a)(1) is satisfied as the Class is so numerous that joinder of all members

is impracticable. While the exact number of Class members is unknown to Plaintiffs at the present time, it is believed to number at least in the tens of thousands. Upon information and belief Plaintiffs as a class have suffered in excess of Five Million Dollars in damages and have suffered injuries.

21. Rule 23(a)(2) and Rule 23(b)(3) are both satisfied because there are questions of law and fact common in Plaintiffs and the Class which predominate over any individual questions affecting only individual members. Among these common questions of law and fact are:

(a) Whether Defendant knew or had reason to know that Head & Shoulders products were being counterfeited and were contaminated and/or dangerous and were being sold to the public;

(b) Whether Defendant knew or had reason to know that Pantene products were being counterfeited and were contaminated and/or dangerous and were being sold to the public;

(c) Whether Defendant knew or had reason to know that the Head & Shoulders products being counterfeited and sold to the public were of inferior quality to the actual product, were contaminated and/or posed health risks to the public;

(d) Whether Defendant knew or had reason to know that the Pantene products being counterfeited and sold to the public were of inferior quality to the actual product were contaminated and/or dangerous and posed health risks to the public

(e) Whether Defendant's conduct constitutes the violations of law alleged herein;

(f) Whether Defendant has failed to adequately notify the Plaintiffs and the Class of the counterfeit products, and/or the inferior quality thereof and/or that they were or may be contaminated and/or the health risks associated therewith;

(f) Whether Defendant should have notified consumers that there was a counterfeit and/or inferior and/or contaminated version of its products which may cause injuries to users on the market;

(g) Whether Defendant's conduct was inappropriate, unfair, deceptive and/or fraudulent in continuing to proactively advertise and affirm the quality of its products when it knew that counterfeit products of inferior quality which may have been contaminated and which may pose health risks were being sold to the public;

(h) Whether Defendant's conduct was inappropriate, unfair, deceptive and/or fraudulent in failing to properly notice, give warning to the Class or disseminate information to the Class about the counterfeit products, the inferior quality and/or contamination thereof and/or the health risks associated therewith;

(i) Whether Defendant knew or had reason to know that Head & Shoulders products were being counterfeited, were of inferior quality and/or contaminated, were being sold to the public and were potentially harmful to the users health;

(j) Whether Defendant knew or had reason to know that Pantene products were being counterfeited, were of inferior quality and/or contaminated, were being sold to the public and were potentially harmful to the users health;

(k) Whether Defendant's conduct was willful and/or intentional;

(l) Whether Defendant's actions were inappropriate, fraudulent, unfair and/or deceptive as alleged herein;

(m) Whether Defendant's actions constituted unfair and deceptive practices affecting commerce;

(n) Whether Defendant used interstate commerce in advising the consuming public of the alleged quality of their products, and whether the Defendant inappropriately kept from the consumer public the fact that its Head & Shoulder's and Pantene products were being counterfeited and were of inferior quality and/or contaminated and may pose health risks to the public to the financial benefit of its enterprise;

(o) Whether Defendant used means wire, radio, or television communication in interstate and foreign commerce, writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, to wit, Defendant caused to be broadcasted through one or more of the aforementioned mediums, writings, signs, pictures, and/or sounds in advising the consuming public of the alleged quality of their products, and whether the Defendant inappropriately kept from the consumer public the fact that its Head & Shoulder's and Pantene products were being counterfeited and were of inferior quality and/or contaminated and may pose health risks to the public to the financial benefit of its enterprise;

(p) Whether Defendant's actions constitute a violation of state consumer protection laws;

(q) Whether Class members are entitled to damages and, if so, in what amount;

(r) Whether Class members are entitled to compensatory and/or punitive damages and, if so, in what amount;

(s) Whether Class members are entitled to medical monitoring for any of the harmful effects of Head & Shoulders products and/or Pantene products;

(t) Whether Plaintiffs and the Class are entitled to the injunctive, remedial and declaratory relief sought in this action.

(u) Whether Plaintiffs and their counsel are entitled to recover attorney's fees and costs and, if so, in what amount.

22. In satisfaction of Federal Rule of Civil Procedure 23(a)(3), Plaintiffs' claims are typical of the Class' claims and do not conflict with the interests of any other members of the Class, because Plaintiffs and all the Class members sustained damages in the same way as a result of Defendant's wrongful conduct complained of herein.

23. In satisfaction of Federal Rule of Civil Procedure 23(a)(4), Plaintiffs will fairly and adequately represent and protect the interests of other Class members and have no interests antagonistic to or which irreconcilably conflict with those of other Class members. Plaintiffs are committed to the vigorous prosecution of this action and have retained counsel experienced in litigation of this nature to represent them and the Class. Plaintiffs anticipate no difficulty in the management of this litigation as a Class action.

24. Pursuant to Federal Rule of Civil Procedure 23(b)(1) and (b)(2), Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate injunctive and/or declaratory relief with respect to the Class as a whole.

25. Notice of pendency of this action can be given either by publication and/or over the Internet.

26. Moreover, a class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by each member of the Class may be relatively small, such that the expense and burden of litigation would make it difficult or impossible for Class members to seek redress individually.

**FIRST CAUSE OF ACTION – FRAUD**

27. Plaintiffs and Class members incorporate and reallege by reference each and every allegation contained in paragraphs 1 through 26 above as if set forth herein verbatim.

28. At a time when Defendant knew that many retailers throughout American were selling counterfeit Head & Shoulders of inferior quality which may have been contaminated and which subjected users to increased health risks and that the public was likely to purchase such counterfeit products, Defendant proactively, voluntarily and publicly disseminated advertisements, literature and other statements affirming and promoting the quality and features of the products, including their safety and encouraging the public to purchase same.

29. Defendant failed to advise Plaintiffs and other Class members that it was aware that there were counterfeit products of inferior quality which may have been contaminated and which may pose health risks were being sold. Additionally, Defendant failed to advise Plaintiffs and other Class members that it was aware that these *known* counterfeit and contaminated products could cause harmful health effects.

30. Defendant knew the true facts concerning the counterfeit products, including their inferior quality and contamination, the possible dangerous effects of the products as detailed above and either unfairly, knowingly and/or recklessly disregarded the potential ramifications of disclosing the facts of those potential dangers to Plaintiffs and Class members, but failed and/or refused to do so, fraudulently concealing the true facts. To the contrary, while knowing of the inferior quality, the contamination, the health risks posed and the likelihood that the public would purchase the counterfeit products, the Defendant proactively continued to promote and advertise its products, affirm the quality thereof and encourage the public to purchase same.

31. Defendant possessed the information regarding the likelihood that the public would purchase the counterfeit products and the inferior quality and/or contamination and health risks posed by the counterfeit products. The Plaintiffs and the Class had the right to know this

information to be able to make an informed decision and avoid injury. Defendant both withheld this information from Plaintiffs and the Class and instead continued to advise and encourage the Plaintiffs and the Class of the superior quality of the P&G hair care products and to purchase same.

32. Defendant's willful non-disclosures or concealments were made with the intent of protecting Defendant's own financial interest and market share and to deceive Plaintiffs and other Class members and, in fact, did so, as evidenced by Plaintiffs and other Class members' unwitting and continuous purchase and use of the counterfeit products and the resulting injuries suffered by the Plaintiffs and the Class.

33. There was a relationship of trust between the Plaintiffs, Class and P&G which had been fostered and cultivated at a great expense by P&G throughout the years as more fully described herein in paragraphs 13, 14 and 15. Plaintiffs and other Class members purchased and/or used the Head & Shoulders and Pantene products reasonably and appropriately relying on the Defendant's proactive representations and encouragement and/or the omissions and concealments of Defendant and/or their agents, employees, representatives and/or servants. Plaintiffs and other members of the Class could not have discovered in the exercise of reasonable diligence Defendant's fraud and misrepresentations and that, as a result of Defendant's proactive advertising that they were purchasing counterfeit products of inferior quality which may have been contaminated and which posed health risks. Had Plaintiffs and other members of the Class known of the truth, non-disclosed, concealed or otherwise suppressed facts, they would not have purchased and/or used the products and would not have suffered the injuries and damages, which they have, in fact, suffered.

34. Defendant had a clear intent to defraud Plaintiffs and the Class as evidenced by omitting the information regarding the counterfeit products which they knew to be of inferior

quality, to be contaminated and to pose health risks. Furthermore at the time that Defendant knew that these counterfeit and dangerous products were on the market and likely to be purchased by the public, the Defendant engaged in a continuous proactive advertising campaign and, rather than warn the public of the risks associated with the counterfeit products which the public was likely to purchase it instead only advised the Plaintiffs and the Class of the superior quality of their hair care products. As such, P&G affirmatively and proactively encouraged the Plaintiffs and the Class to purchase their products when P&G knew the likelihood that Plaintiffs would instead purchase the counterfeit, contaminated and dangerous products.

35. Defendant failed to disclose to Plaintiffs and the Class that there were counterfeited products of inferior quality and which posed health risks being sold of which the Plaintiffs and the Class were likely to purchase and affirmatively and pro actively advise of the superior quality of the products when Defendant knew this was not true and that Plaintiffs and the Class were instead likely to purchase the inferior, contaminated and dangerous counterfeit products.

36. As a proximate result of the foregoing misrepresentations and/or omissions, Plaintiffs and other members of the Class have suffered actual injuries and damages. By virtue of the foregoing, Plaintiffs and other members of the Class are entitled to an award of damages and other appropriate relief.

37. In addition, by virtue of the foregoing, Plaintiffs demand judgment for Plaintiffs and the Class which (a) creates a monetary fund to effectuate all of the relief, including remedial relief, sought under Subsections "B" through "F" of the Ad Damnum clause set forth, infra, in this Complaint to which the Court is respectfully referred and (b) affords to Plaintiffs and the Class all of the declaratory, remedial and injunctive relief sought under subsection "G" of the Ad Damnum clause set forth, infra, in this Complaint.

**SECOND CAUSE OF ACTION-**
**VIOLATION OF RACKETEER INFLUENCED AND**
**CORRUPT OGANIZATION ACT ("RICO")-18 U.S.C § 1962**

38. Plaintiffs and Class members incorporate and reallege by reference each allegation contained in paragraphs 1 through 26 above as if set forth herein verbatim.

39. Defendant received, directly or indirectly, income derived from a pattern of racketeering activity and used or invested said income to operate and expand its enterprise, to wit, the Defendant P & G's enterprise, which sells consumer products, and more particularly its Head & Shoulders and Pantene line of hair care products.

40. Defendant's racketeering activity affected interstate and foreign commerce in that Defendant devised or intended to devise a scheme or artifice to defraud, or obtain money or property by means of false or fraudulent pretenses, representations, or promises, which were caused to be transmitted by means of wire, radio, or television communication in interstate and foreign commerce, writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, to wit, Defendant caused to be broadcasted through one or more of the aforementioned mediums, writings, signs, pictures, and/or sounds to consumers advertisings describing its Head & Shoulders and Pantene shampoos and conditioners as a superior product that will clean and revitalize hair like no other product on the market when in reality Defendant was misleading consumers because it had specific knowledge that there was an inferior counterfeit, contaminated and dangerous product bearing Defendant's Head & Shoulders and Pantene brand names which the Plaintiffs and the Class were likely to purchase and which were of inferior quality and subjected users to increased health risks on the market which Defendant purposely chose not to reveal to consumers.

41. Defendant was advertising its Head & Shoulders and Pantene shampoos and conditioners as superior products and encouraging the public to purchase same while at the time

knowing that its products were being counterfeited and that the public was likely to purchase these counterfeit, contaminated and dangerous products and that consumers were purchasing an inferior counterfeit, contaminated and dangerous product which subjected users to increased health risks. Despite its knowledge of same, Defendant instead proactively continued to advertise its products and continued to promote and affirm to the Plaintiffs and the Class that their products were of superior quality and chose not to notify consumers about the counterfeit, contaminated and dangerous products because Defendant did not want to see a decline in the sales of its Head & Shoulders and Pantene shampoos and conditioners nor its market share, thereby benefiting from the increase in sales, market share and demand for its products to the detriment of unwary consumers.

42. Defendant had a conscious and knowing intent to defraud the consuming public, and they did this with the income derived from their fraudulent scheme in part by continuing to positively advertise the superior quality of the products when they knew the public instead was likely to purchase the counterfeit, contaminated and dangerous products which may pose health risks. Accordingly, consumers continued to buy the P&G products based on the false representations made through the means of wire, radio, television, writing, signs, and numerous other mediums. Discovery will produce the different items used and directed by Defendant, i.e. newspaper, television etc., in addition to the dates they were sent out and the content of these ads.

43. Defendant benefited from the fraud perpetrated against consumers by receiving income therefrom. Defendant was also able to acquire and/or maintain, directly or indirectly, an interest in and/or control of other enterprises and/or ventures as a result of its racketeering activities.

44. Defendant's subsidiaries, agents and/or employees also benefited from

Defendant's conduct in that they received income or such other pecuniary gain based on Defendant's activities as above described.

45. As a result of Defendant's racketeering activities Plaintiffs have been injured in their business, health and/or property in that Plaintiffs unwittingly purchased the inferior counterfeit, contaminated and dangerous version of Defendant's products due to Defendant's proactive advertising, promotion and failure to warn which subjected Plaintiffs and the Class to damages and injury when, if Plaintiffs had been aware that an inferior counterfeit, contaminated and dangerous version of Defendant's products which posed health risks were on the market, the Plaintiffs would not have purchased Head & Shoulders and Pantene products. Plaintiffs were further injured in their property in that Plaintiffs unwittingly used the inferior, contaminated and dangerous counterfeit version of Defendant's Head & Shoulders and Pantene hair care products without achieving the results advertised by Defendant. Moreover, Plaintiffs and the Class were injured in that they were not given the right to make an informed decision regarding their hair care product knowing all of the facts, i.e., that there was counterfeit Head and Shoulders and Pantene hair care products of inferior quality which were contaminated and posed health risks on the market.

46. In addition, by virtue of the foregoing, Plaintiffs demand judgment for Plaintiffs and the Class which (a) creates a monetary fund to effectuate all of the relief, including remedial relief, sought under Subsections "B" through "F" of the Ad Damnum clause set forth, infra, in this Complaint to which the Court is respectfully referred and (b) affords to Plaintiffs and the Class all of the declaratory, remedial and injunctive relief sought under subsection "G" of the Ad Damnum clause set forth, infra, in this Complaint.

**THIRD CAUSE OF ACTION -**
**STATE CONSUMER PROTECTION LAWS**

47. Plaintiffs and Class members incorporate and reallege by reference each allegation contained in paragraphs 1 through 26 above as if set forth herein verbatim.

48. Plaintiffs, the Class and the Subclass members were and are consumers under the State Consumer Protection Laws, including but not limited to Florida Statute § 501.204 making unlawful "unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." All other states have similar consumer fraud statutes making such acts and practices unlawful.

49. Defendant's actions of not advising the Plaintiffs, the Class and the Subclass that counterfeit products of inferior quality which were contaminated and which posed health risks were being sold and, at the same time, by continuing to proactively advertise to promote and affirm the quality of such products and encourage the public to purchase same while knowing that the public was likely to purchase the counterfeit, contaminated and dangerous products instead constitutes false and misleading business practices, unconscionable acts or practices and/or unfair or deceptive acts or practices. Moreover, concealing and/or omitting to reveal to consumers that the counterfeit products were inferior, contaminated and potentially hazardous constitute false and misleading business practices, unconscionable acts or practices and/or unfair or deceptive acts or practices. Further, promoting the superior quality of their product and encouraging the public to purchase same while knowing that counterfeit P&G hair care products were being sold on the market and likely to be purchased by the public constitutes false and misleading business practices, unconscionable acts or practices and/or unfair or deceptive acts or practices.

50. As a result thereof, Plaintiffs, the Class and members of the Subclass have been injured. Plaintiffs and the Class are not seeking personal injury damages in this cause of action.

51. In addition, by virtue of the foregoing, Plaintiffs demand judgment for Plaintiffs and the Class which (a) creates a monetary fund to effectuate all of the relief, including remedial relief, sought under Subsections "B", "C", "E"-"F", of the Ad Damnum clause set forth, infra, in this Complaint to which the Court is respectfully referred and (b) affords to Plaintiffs and the Class all of the declaratory, remedial and injunctive relief sought under subsection "G" of the Ad Damnum clause set forth, infra, in this Complaint.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of himself and all other similarly situated, prays for judgment and relief against the Defendant as stated in the following Ad Damnum Clause:

A) Declaring this action to be a proper class action maintainable under Federal Rules of Civil Procedure, Rule 23, and certifying an appropriate Class and/or Subclass and certifying Plaintiffs as Class and Subclass representative;

B) Providing a fund for the purposes of dissemination of the information required hereunder; and paying for the monitoring of a corrective campaign.

C) Awarding actual damages in an amount to be determined at trial;

D) Requiring Defendant to pay for the costs of medical monitoring and/or testing that Plaintiffs and the Class will incur now or in the future as to whether they develop any negative effects related to the use of the counterfeit products.

E) Entering a temporary, preliminary or permanent order for the purposes of:

(1) enjoining the Defendant from conducting business using the unlawful acts and practices described in this Complaint;

(2) ordering Defendant to conduct a corrective information campaign advising consumers and users of the products as to the counterfeit products in the stream of commerce;

F) Awarding the costs and disbursements incurred by Plaintiffs in connection with this action, including reasonable attorneys' fees; and,

G) Awarding such other and further relief as the Court deems just and proper.

DATED at Miami-Dade County, Florida this _____ day of August, 2005.

Respectfully Submitted,

**SCHWARTZ ZWEBEN & SLINGBAUM LLP**

By: ____/s/ Gregory E. Schwartz_____
Matthew P. Slingbaum, Esq.
Florida Bar No. 0195979
Gregory E. Schwartz, Esq.
Florida Bar No. 095559
3876 Sheridan Street
Hollywood, Florida 33021
Telephone:(954) 966-2483
Facsimile:(954) 966-2566
mslingbaum@szalaw.com

**-and-**

Michael R. Miller, Esq.
Florida Bar No.
801 NE 167th Street
Second Floor
North Miami Beach, Fl 33162
Telephone: 305-792-9000
Facsimile :305-455-2050

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

CASE NO. 05-21646-CIV-SEITZ/McALILEY

WILLIAM SCHOENBAUM AND
ELAYNE STERN individually, and on
behalf of all others similarly situated,

Plaintiffs,

v.

THE PROCTER & GAMBLE COMPANY,

Defendant.
________________________________________/

**PLAINTIFFS' NOTICE OF FILING OF AMENDED COMPLAINT AND WITHDRAWAL OF INITIAL COMPLAINT**

COMES NOW, Plaintiffs, WILLIAM SCHOENBAUM and ELAYNE STERN, individually, and on behalf of all others similarly situated and hereby notifies this Court of its filing of an Amended Complaint and Withdrawal of their Initial Complaint.

Pursuant to Federal Rule of Civil Procedure 15(a) "a party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served."

In response to the Plaintiffs' initial Complaint, the Defendant filed a Motion to Dismiss. A Motion to Dismiss is not deemed a responsive pleading for purposes of Rule 15(a). *See* United States v. Newbury Mfg. Co., 292 F2d 140 (1941, CA1 Mass), McLellan v. Mississippi Power & Light Co. 526 F.2d 870 (1976, CA5 Miss) and Richardson v. United States, 336 F2d 265 (1964 CA9 Alaska), Miles v. Department of Army, 881 F.2d 777 (1989 CA9 Cal) (where Defendant had only filed motion to dismiss, which is not responsive pleading, plaintiff still had right to amend his complaint), Fortner v. Thomas, 983 F2d 1024 (1993, CA11 Ga)(motion to dismiss is

not considered to be responsive pleading for purposes of Rule 15(a), and therefore plaintiffs are still free to amend their complaint at least once where Defendants have filed motion to dismiss but no other pleading).

As such, the Plaintiffs are simultaneously filing an Amended Complaint and withdrawing their initial Complaint.

**SCHWARTZ ZWEBEN & SLINGBAUM LLP**
Attorneys for Plaintiffs
3876 Sheridan Street
Hollywood, Florida 33021
Telephone: (954) 966-2483
Facsimile: (954) 966-2566

By: /s/ Gregory E. Schwartz
Gregory E. Schwartz
Florida Bar No. 0095559

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I electronically filed the foregoing document with the Clerk of the Court on this 25th day of August 2005 and furnished same via facsimile and U.S. Mail to: Jay B. Shapiro, Esq., Stearns, Weaver, Miller, Weissler, Alhadeff & Sitterson, P.A., Attorneys for Defendant, Suite 2200, Museum Tower, 150 West Flagler Street, Miami, FL 33130.

/s/ Gregory E. Schwartz
Gregory E. Schwartz, Esq.