FILED by EG D.C.
ELECTRONIC
Oct 7 2005
CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. · MIAMI

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

CASE NO. 05-21646-CIV-SEITZ/McALILEY

WILLIAM SCHOENBAUM AND
ELAYNE STERN individually, and on
behalf of all others similarly situated,

Plaintiffs,

v.

THE PROCTER & GAMBLE COMPANY,

Defendant.
_______________________________________/

# SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiffs, WILLIAM SCHOENBAUM and ELAYNE STERN, individually, and on behalf of all others similarly situated, by and through their undersigned counsel, for this, their Second Amended Class Action Complaint, allege the claims set forth herein. Plaintiffs' claims as to themselves and their own actions are based upon their personal knowledge. All other allegations are based upon information and belief pursuant to the investigations of counsel. Based upon such investigation, Plaintiffs believe that substantial evidentiary support exists for the allegations herein or that such allegations are likely to have evidentiary support after a reasonable opportunity for further investigation and/or discovery.

**NATURE OF THE ACTION**

1. This case has its genesis in a separate action filed by Defendant, THE PROCTER & GAMBLE COMPANY ("P & G") wherein Defendant P & G has brought suit in the United States District Court, Eastern District of New York against various defendants for trademark infringement, among other things, in relation to counterfeiting and the fraudulent sale of its Pantene and Head & Shoulders line of products *(Procter & Gamble v. Xetal, Inc., et al., 04-Civ.2820 (DRH) (the "New York Action")* and named several individual and corporate Defendants who reside in the Southern District of Florida. The Third-Amended Complaint filed in the New York Action is attached hereto as Exhibit "A" and is, in connection with the entire record of the New York Action, incorporated herein by reference.

2. Defendant is a manufacturer and marketer of the extremely successful hair care products, Head & Shoulders and Pantene. Head & Shoulders is indicated for treatment of dandruff and other fungal problems and is required to have drug interaction warnings printed conspicuously on its label.

3. As will be explained in greater detail herein, Defendant has known for a substantial period of time (or at least since May 3, 2004) that a significant amount of counterfeit Head & Shoulders and Pantene (hereinafter sometimes collectively referred to as the "products") which are of inferior quality, contaminated and may cause injuries to users have been placed in the stream of commerce. In fact, counsel for the Defendant in the New York action mentioned the potential injury to members of the Class herein described below in a discovery deposition wherein counsel for P & G states:

> "If, after our deposition, you should occur to you [sic] that you know of a quantity somewhere, I would ask you to you're your attorney to convey that information, with the hope that he would convey it to me. Because not only are the products counterfeit, but

some of them are contaminated, and could hurt someone who has a weakened immune system. So we want to make every effort we can to try to see that they stay out of circulation."

An excerpt of such deposition is attached hereto as Exhibit "B" and incorporated by reference. Despite its knowledge of same and alleged intent to ensure that the products stay out of circulation, Defendant has intentionally encouraged the American public to purchase such products.

4. As discussed below, Defendant has intentionally engaged in extensive advertising, marketing, publicity, distribution and sales campaigns promoting the supposed quality and safety of Head & Shoulders and Pantene, directing those advertising, marketing, publicity, distribution and sales campaigns at prospective purchasers and users of Head & Shoulders and Pantene while knowing that purchasers were likely to be purchasing the counterfeit products which were of inferior quality, contaminated and may cause injuries.

5. Defendant knew that the Head & Shoulders and Pantene products being sold and purchased by the public were counterfeit, contaminated, inferior and may cause injury to users, yet they concealed from the general public, purchasers and users of the products this information. Moreover, they purposely conducted an advertising campaign alleging the superior quality of their products and encouraging the public to purchase same while knowing the inferior quality and the likelihood that the public would purchase the version the their product that was counterfeit which was inferior, contaminated and posed health risks.

6. Plaintiffs seek, on behalf of themselves and members of the Class, injunctive relief, equitable relief, medical monitoring, monetary damages, statutory, actual, and punitive damages, to redress Defendant's unlawful practices and acts.

7. Plaintiffs and the Class were harmed and have suffered an injury by the deception

committed by P & G which did not allow them the right to make an informed choice concerning the purchase of their hair care products. In addition to the monetary injuries and medical injuries, Plaintiffs and the Class were harmed in that that they are presently suffering or may suffer injuries in the future due to the inferior quality and heath risks posed by the counterfeited products actually purchased by the public as a result of Defendant's intentional, false and misleading proactive advertising encouraging the public to purchase the products when the Defendant knew the public was likely to purchase to counterfeit and contaminated products instead.

**JURISDICTION AND VENUE**

8. This Court has jurisdiction pursuant to 18 U.S.C § 1962 and 28 U.S.C. §§ 1331, 1367 and general principles of ancillary and pendent jurisdiction.

9. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendant provides good and services to Plaintiffs and Class members located in this district, and conduct substantial business in this district. Moreover, Plaintiffs reside in the district and have been subjected to the wrongs complained of herein and suffered injury in the district.

10. In connection with the acts, transactions and conduct alleged herein, Defendant used the means and instrumentalities of interstate commerce, including the United States mail.

**PARTIES**

11. Plaintiff WILLIAM SCHOENBAUM, is and was at all times relevant hereto, a resident of Miami-Dade County, State of Florida, and is otherwise *sui juris.* Plaintiff was at all material times hereto a user of Head and Shoulders hair care products.

12. Plaintiff ELAYNE STERN, is and was at all times relevant hereto, a resident of Miami-Dade County, State of Florida and is otherwise *sui juris.* Plaintiff was at all material times hereto a user of Pantene hair care products.

13. Defendant PROCTOR AND GAMBLE (hereinafter referred to as "P & G") is a foreign corporation, with its principal place of business located in Cincinnati, Ohio. Defendant, P&G conducts business in the Southern District of Florida and has sufficient minimum contacts with the Southern District of Florida as to make jurisdiction and venue proper in the Southern District of Florida.

## FACTUAL ALLEGATIONS

14. Defendant P & G has brought suit in the United States District Court, Eastern District of New York against various defendants for trademark infringement, among other things, in relation to counterfeiting and the fraudulent sale of its Pantene and Head & Shoulders line of products *(the New York Action).*

15. The Defendant P & G "is a distributor of world-renowned high-quality consumer products sold under various registered trademarks, including 'Pantene' and 'Head & Shoulders.' These trademarks have become extremely valuable as a result of Proctor & Gamble's substantial marketing efforts and the tremendous public acceptance of products bearing those distinctive marks. For example, since 1999, Proctor & Gamble has spent more than $980 million dollars advertising Pantene and has achieved sales of that product well in excess of $3 billion dollars. Similarly, during that same period, Proctor & Gamble has spent more than $286 million dollars advertising Head & Shoulders and has achieved sales of that product well in excess of $1 billion dollars." *Id.* at 2.

16. "Proctor & Gamble has spent and continues to spend large sums of money marketing and selling in interstate commerce Pantene and Head & Shoulders shampoo packaged in high-quality bottles bearing its trademarks and trade dress. As a result of the extensive advertising of Pantene and Head & Shoulders in connection with the Proctor & Gamble trademarks…Pantene and Head & Shoulders…is now recognized by the public and in the trade

as originating from a single source, Proctor & Gamble." *Id.* at 7.

17. "Proctor & Gamble has engaged and continues to engage in interstate activities designed to promote Pantene and Head & Shoulders and the business and goodwill associated with each of its trademarks and to expand the use and reputation of its trademarks, trade dress, logos and property in the state of New York and throughout the United States." Id.

18. Defendant P & G has invested a substantial sum of money into promoting its Pantene and Head & Shoulders line of products. Defendant P & G has done so, however, to the detriment of the consuming public by continuing to intentionally and proactively promote the alleged quality of their hair care products and encourage the public to purchase same while knowing that counterfeit products of inferior quality and which were contaminated and could cause injury were likely to be purchased by consumers in America.

19. Defendant acquiesced in the fraud being perpetrated against consumers and, in essence, became an accomplice by intentionally and proactively advertising and affirming the quality of their products while knowing that it was likely that the public would purchase the inferior and dangerous counterfeit and contaminated products to the detriment of their health. As a result, the Plaintiffs have been injured and suffered damages. In fact, during all times material hereto, the Defendant conducted extensive meetings and investigations regarding the existence of the counterfeit products and the health risks associated therewith and conducted numerous meetings on the topic of "consumer strategies" as evidenced by its privilege log submitted in the New York action attached hereto as Exhibit "C" and incorporated herein by reference. Plaintiffs aver that many, if not all, of these meetings and investigations are not privileged and have been intentionally labeled as such solely to prevent discovery.

20. Defendant, as manufacturer of these products, had built a relationship of trust and Plaintiffs and the Class relied on that relationship of trust and depended on P&G. It was unfair,

deceptive and fraudulent for Defendant not to cease from intentionally and proactively affirming the quality of its products and encouraging the public to purchase same when it knew that the public was likely to purchase the inferior, contaminated and dangerous counterfeit products. The Defendant's conduct was unfair, deceptive and fraudulent in affirmatively promoting the superior quality of their products and encouraging the public to purchase same when P&G knew that the public was likely to purchase the counterfeit products which P&G knew was in fact inferior and dangerous. The Plaintiffs were injured a result of Defendant's conduct and suffered damages as a result thereof.

## CLASS ACTION ALLEGATIONS

21. Plaintiffs bring this action on behalf of themselves and all other persons similarly situated who have been harmed by the Defendant's conduct, as alleged herein -- *i.e.*, (a) all persons who purchased and/or used either Head & Shoulders products or Pantene products (the "Class") on or after May 3, 2004. Excluded from the Class are Defendant and their officers, directors, management and employees, subsidiaries or affiliates. This action is maintainable as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs have satisfied FRCP 23 (a) (1),(2),(3),(4) and FRCP 23 (b) (1), (2) and (3).

22. Rule 23 (a)(1) is satisfied as the Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiffs at the present time, it is believed to number at least in the tens of thousands. Upon information and belief Plaintiffs as a Class have suffered in excess of Five Million Dollars in damages and have suffered injuries.

23. Rule 23(a)(2) and Rule 23(b)(3) are both satisfied because there are questions of law and fact common in Plaintiffs and the Class which predominate over any individual

questions affecting only individual members. Among these common questions of law and fact are:

(a) Whether Defendant knew that Head & Shoulders products were being counterfeited and were contaminated and/or dangerous and were being sold to the public;

(b) Whether Defendant knew that Pantene products were being counterfeited and were contaminated and/or dangerous and were being sold to the public;

(c) Whether Defendant knew that the Head & Shoulders products being counterfeited and sold to the public were of inferior quality to the actual product, were contaminated and/or posed health risks to the public;

(d) Whether Defendant knew that the Pantene products being counterfeited and sold to the public were of inferior quality to the actual product were contaminated and/or dangerous and posed health risks to the public

(e) Whether Defendant's conduct constitutes the violations of law alleged herein;

(f) Whether Defendant's conduct was inappropriate, unfair, deceptive and/or fraudulent in continuing to proactively advertise and affirm the quality of its products when it knew that counterfeit products of inferior quality which may have been contaminated and which may pose health risks were being sold to the public;

(g) Whether Defendant's conduct was willful and/or intentional;

(h) Whether Defendant's actions were fraudulent, unfair and/or deceptive as alleged herein;

(i) Whether Defendant's actions constituted unfair and deceptive practices affecting commerce;

(j) Whether Defendant used interstate commerce in intentionally and proactively advising the consuming public of the alleged quality of their products when it knew that counterfeit products of inferior quality which may have been contaminated and which may pose health risks were likely to be purchased by the public to the financial benefit of its enterprise;

(k) Whether Defendant used means wire, radio, or television communication in interstate and foreign commerce, writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, to wit, Defendant caused to be broadcasted through one or more of the aforementioned mediums, writings, signs, pictures, and/or sounds in advising the consuming public of the alleged quality of their products when it knew that counterfeit products of inferior quality which may have been contaminated and which may pose health risks were likely to be

purchased by the public to the financial benefit of its enterprise;

(l) Whether Defendant's actions constitute a violation of state consumer protection laws;

(m) Whether Class members suffered injuries;

(n) Whether Class members are entitled to damages and, if so, in what amount;

(o) Whether Class members are entitled to compensatory and/or punitive damages and, if so, in what amount;

(p) Whether Class members are entitled to medical monitoring for any of the harmful effects of Head & Shoulders products and/or Pantene products;

(q) Whether Plaintiffs and the Class are entitled to the injunctive, remedial and declaratory relief sought in this action.

(r) Whether Plaintiffs and their counsel are entitled to recover attorney's fees and costs and, if so, in what amount.

24. In satisfaction of Federal Rule of Civil Procedure 23(a)(3), Plaintiffs' claims are typical of the Class' claims and do not conflict with the interests of any other members of the Class, because Plaintiffs and all the Class members sustained damages in the same way as a result of Defendant's wrongful conduct complained of herein.

25. In satisfaction of Federal Rule of Civil Procedure 23(a)(4), Plaintiffs will fairly and adequately represent and protect the interests of other Class members and have no interests antagonistic to or which irreconcilably conflict with those of other Class members. Plaintiffs are committed to the vigorous prosecution of this action and have retained counsel experienced in litigation of this nature to represent them and the Class. Plaintiffs anticipate no difficulty in the management of this litigation as a Class action.

26. Pursuant to Federal Rule of Civil Procedure 23(b)(1) and (b)(2), Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate injunctive and/or declaratory relief with respect to the Class as a whole.

27. Notice of pendency of this action can be given either by publication and/or over

the Internet.

28. Moreover, a class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by each member of the Class may be relatively small, such that the expense and burden of litigation would make it difficult or impossible for Class members to seek redress individually.

**FIRST CAUSE OF ACTION – FRAUD**

29. Plaintiffs and Class members incorporate and reallege by reference each and every allegation contained in paragraphs 1 through 28 above as if set forth herein verbatim.

30. At a time when Defendant knew that many retailers throughout American were selling counterfeit Head & Shoulders of inferior quality which may have been contaminated and which subjected users to increased health risks and that the public was likely to purchase such counterfeit products, Defendant intentionally, proactively and publicly disseminated advertisements, literature and other false statements affirming and promoting the quality and features of the products, including their safety and encouraging the public to purchase same when it knew that the public was likely to purchase the counterfeit products which caused harm to the Plaintiffs and the public. Plaintiffs were injured and suffered harm as a result thereof.

31. Defendant knew the true facts concerning the counterfeit products, including the likelihood that they would be purchased by the public, their inferior quality and contamination, the possible dangerous effects of the products as detailed above and intentionally and recklessly disregarded the potential injury and damages to the Plaintiffs and the Class by fraudulently and intentionally proactively continuing to promote and advertise its products, affirm the quality thereof and encourage the public to purchase same. Plaintiffs were injured and suffered harm as a result thereof.

32. Defendant's intentional and proactive advertising containing knowingly false

statements affirming the quality of the products while knowing that the public was likely to purchase the contaminated and dangerous counterfeit products were made with the intent of protecting Defendant's own financial interest and market share and to deceive Plaintiffs and other Class members and, in fact, did so, as evidenced by Plaintiffs and other Class members' unwitting and continuous purchase and use of the counterfeit products and the resulting injuries and damages suffered by the Plaintiffs and the Class.

33. Plaintiffs and the Class relied to their detriment on the intentional false representations of P&G regarding the alleged quality of the products and, based on Defendant's intentional and false advertisements, Plaintiffs and Class members purchased and/or used the Head & Shoulders and Pantene products. Plaintiffs and other members of the Class could not have discovered in the exercise of reasonable diligence that Defendant's statements were fraudulent and misrepresented the truth and that, as a result of Defendant's intentional advertising that they were purchasing counterfeit products of inferior quality which may have been contaminated and which posed health risks. Had Plaintiffs and other members of the Class not been encouraged to purchase the Defendant's products based on Defendant's advertisements containing false statements, they would not have purchased and/or used the products and would not have suffered the injuries and damages, which they have, in fact, suffered.

34. Defendant had a clear intent to defraud Plaintiffs and the Class as evidenced by their engaging in a continuous intentional advertising campaign containing false statements at the time that Defendant knew that these counterfeit and dangerous products were on the market and likely to be purchased by the public. As such, P&G affirmatively and intentionally encouraged the Plaintiffs and the Class to purchase their products when P&G knew the likelihood that Plaintiffs would instead purchase the counterfeit, contaminated and dangerous products. Plaintiffs were injured and suffered harm as a result thereof.

35. Plaintiffs and the Class were harmed and have suffered injury and damages by the intentional fraud and deception committed by P & G which did not allow them the right to make an informed choice concerning the purchase of their hair care products.

36. As a proximate result of the foregoing fraud, intentional misrepresentations and false statements, Plaintiffs and other members of the Class have suffered actual injuries and damages. By virtue of the foregoing, Plaintiffs and other members of the Class are entitled to an award of damages and other appropriate relief.

37. In addition, by virtue of the foregoing, Plaintiffs demand judgment for Plaintiffs and the Class which (a) creates a monetary fund to effectuate all of the relief, including remedial relief, sought under Subsections "B" through "F" of the Ad Damnum clause set forth, infra, in this Complaint to which the Court is respectfully referred and (b) affords to Plaintiffs and the Class all of the declaratory, remedial and injunctive relief sought under the Ad Damnum clause set forth, infra, in this Complaint.

**SECOND CAUSE OF ACTION-**
**VIOLATION OF RACKETEER INFLUENCED AND**
**CORRUPT OGANIZATION ACT ("RICO")-18 U.S.C § 1962**

38. Plaintiffs and Class members incorporate and reallege by reference each allegation contained in paragraphs 1 through 28 above as if set forth herein verbatim.

39. Defendant received, directly or indirectly, income derived from a pattern of racketeering activity and used or invested said income to operate and expand its enterprise, to wit, the Defendant P & G's enterprise, which sells consumer products, and more particularly its Head & Shoulders and Pantene line of hair care products.

40. In violation of 18 USC § 1341 (mail fraud) and 18 USC § 1343 (wire fraud) Defendant's racketeering activity affected interstate and foreign commerce in that Defendant devised or intended to devise a scheme or artifice to defraud, or obtain money or property by

means of false or fraudulent pretenses, representations, or promises, which were caused to be transmitted by means of wire, radio, or television communication in interstate and foreign commerce, writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, to wit, Defendant intentionally caused to be broadcasted through one or more of the aforementioned mediums, writings, signs, pictures, and/or sounds to consumers advertisings describing its Head & Shoulders and Pantene shampoos and conditioners as a superior product that will clean and revitalize hair like no other product on the market when in reality Defendant was misleading consumers because it had specific knowledge that there was an inferior counterfeit, contaminated and dangerous product bearing Defendant's Head & Shoulders and Pantene brand names which the Plaintiffs and the Class were likely to purchase and which were of inferior quality and subjected users to increased health risks on the market which Defendant purposely chose not to reveal to consumers.

41. Defendant was advertising its Head & Shoulders and Pantene shampoos and conditioners as superior products and intentionally encouraging the public to purchase same while at the time knowing that its products were being counterfeited and that the public was likely to purchase these counterfeit, contaminated and dangerous products and that consumers were purchasing an inferior counterfeit, contaminated and dangerous product which subjected users to increased health risks. Despite its knowledge of same, Defendant instead intentionally continued to advertise its products and continued to promote and affirm to the Plaintiffs and the Class that their products were of superior quality because Defendant did not want to see a decline in the sales of its Head & Shoulders and Pantene shampoos and conditioners nor its market share, thereby benefiting from the increase in sales, market share and demand for its products to the detriment of unwary consumers.

42. Defendant had a conscious and knowing intent to defraud the consuming public,

and they did this with the income derived from their fraudulent scheme in part by continuing to positively advertise the superior quality of the products when they knew the public instead was likely to purchase the counterfeit, contaminated and dangerous products which may pose health risks. Accordingly, consumers continued to buy the P&G products based on the false representations made through the means of wire, radio, television, writing, signs, and numerous other mediums. Discovery will produce the different items used and directed by Defendant, i.e. newspaper, television etc., in addition to the dates they were sent out and the content of these ads.

43. Defendant benefited from the fraud perpetrated against consumers by receiving income therefrom. Defendant was also able to acquire and/or maintain, directly or indirectly, an interest in and/or control of other enterprises and/or ventures as a result of its racketeering activities.

44. Defendant's subsidiaries, agents and/or employees also benefited from Defendant's conduct in that they received income or such other pecuniary gain based on Defendant's activities as above described.

45. As a result of Defendant's racketeering activities Plaintiffs have been injured in their business, health and/or property and damaged in that Plaintiffs unwittingly purchased the inferior counterfeit, contaminated and dangerous version of Defendant's products due to Defendant's intentional advertising and promotion which subjected Plaintiffs and the Class to damages and injury when, if Plaintiffs had not been encouraged to purchase the counterfeit products based on Defendant's intentional and false advertisements, the Plaintiffs would not necessarily have purchased Head & Shoulders and Pantene products. Plaintiffs were further injured in their property and damaged in that Plaintiffs unwittingly used the inferior, contaminated and dangerous counterfeit version of Defendant's Head & Shoulders and Pantene

hair care products without achieving the results advertised by Defendant due to Defendant's intentional and misleading advertising. Moreover, Plaintiffs and the Class were damaged and injured in that they were not given the right to make an informed decision regarding their hair care product due to Defendant's intentional and false advertisements encouraging individuals to purchase their products while knowing the likelihood that the public may, in fact, purchase the counterfeit and contaminated products.

46. In addition, by virtue of the foregoing, Plaintiffs demand judgment for Plaintiffs and the Class which (a) creates a monetary fund to effectuate all of the relief, including remedial relief, sought under Subsections "B" through "F" of the Ad Damnum clause set forth, infra, in this Complaint to which the Court is respectfully referred and (b) affords to Plaintiffs and the Class all of the declaratory, remedial and injunctive relief sought under of the Ad Damnum clause set forth, infra, in this Complaint.

**THIRD CAUSE OF ACTION -**
**STATE CONSUMER PROTECTION LAWS**

47. Plaintiffs and Class members incorporate and reallege by reference each allegation contained in paragraphs 1 through 28 above as if set forth herein verbatim.

48. Plaintiffs and the Class were and are consumers under the State Consumer Protection Laws, including but not limited to Florida Statute § 501.204 making unlawful "unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." All other states have similar consumer fraud statutes making such acts and practices unlawful.

49. Defendant's actions of continuing to intentionally advertise to promote and affirm the quality of its products and encourage the public to purchase same while knowing that the public was likely to purchase the counterfeit, contaminated and dangerous products instead

constitutes false and misleading business practices, unconscionable acts or practices and/or unfair or deceptive acts or practices. Moreover, Defendant's actions of continuing to intentionally advertise to promote and affirm the quality of its products and encourage the public to purchase same while knowing that the public was likely to purchase the counterfeit, contaminated and dangerous products instead constitutes false and misleading business practices, unconscionable acts or practices and/or unfair or deceptive acts or practices.

50. As a direct and proximate result thereof of Defendant's intentional actions and misrepresentations in violation of Florida Statute 501.204 and similar state statutes, Plaintiffs and the Class have suffered economic and non-economic injuries and damages. Plaintiffs and the Class are not seeking personal injury damages in this cause of action.

51. In addition, by virtue of the foregoing, Plaintiffs demand judgment for Plaintiffs and the Class which (a) creates a monetary fund to effectuate all of the relief, including remedial relief, sought under Subsections "B," "D" through "F", of the Ad Damnum clause set forth, infra, in this Complaint to which the Court is respectfully referred and (b) affords to Plaintiffs and the Class all of the declaratory, remedial and injunctive relief sought under the Ad Damnum clause set forth, infra, in this Complaint.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of himself and all other similarly situated, prays for judgment and relief against the Defendant as stated in the following Ad Damnum Clause:

A) Declaring this action to be a proper class action maintainable under Federal Rules of Civil Procedure, Rule 23, and certifying an appropriate Class and certifying Plaintiffs as Class representative;

B) Awarding actual damages in an amount to be determined at trial;

C) Requiring Defendant to pay for the costs of medical monitoring and/or testing that Plaintiffs and the Class will incur now or in the future as to whether they develop any negative effects related to the use of the counterfeit products.

D) Entering a temporary, preliminary or permanent order for the purposes of: enjoining the Defendant from conducting business using the unlawful acts and practices described in this Complaint;

E) Awarding the costs and disbursements incurred by Plaintiffs in connection with this action, including reasonable attorneys' fees; and,

F) Awarding such other and further relief as the Court deems just and proper.

DATED at Miami-Dade County, Florida this 7th day of October, 2005.

Respectfully Submitted,

**SCHWARTZ ZWEBEN & SLINGBAUM LLP**

By: ____/s/ Gregory E. Schwartz_____
Gregory E. Schwartz, Esq.
Florida Bar No. 095559
Matthew P. Slingbaum, Esq.
Florida Bar No. 0195979
3876 Sheridan Street
Hollywood, Florida 33021
Telephone:(954) 966-2483
Facsimile:(954) 966-2566
mslingbaum@szalaw.com

**-and-**

Michael R. Miller, Esq.
Florida Bar No. 508179
801 NE 167th Street
Second Floor
North Miami Beach, Fl 33162
Telephone: 305-792-9000
Facsimile :305-455-2050
miller@millerlaw.net

## Certificate of Service

**I HEREBY CERTIFY** that I electronically filed the foregoing document with the Clerk of the Court and to the following ECF Registrants on this 7th day of October, 2005: **jshapiro@swmwas.com ; and aschachter@swmwas.com .**

____/s/ Gregory E. Schwartz_____
Gregory E. Schwartz, Esq.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

THE PROCTER & GAMBLE COMPANY,

Plaintiff,

- against -

XETAL, INC. d/b/a APO HEALTH, INC. and UNIVERSAL MEDICAL DISTRIBUTORS, INC.; ATM, INC.; TRANS CUSTOMS SERVICES; BROTHERS TRADING CO., INC. d/b/a VICTORY WHOLESALE GROCERS a/k/a SK-TORS; AMG WORLDWIDE, INC.; AMG COMMUNICATIONS, CORP.; GARY GRUENBERG; SYLVIA a/k/a SYLVIE GRUENBERG; JAN STAHL; FRED HARRICK; PAUL CHOU a/k/a CHOU CHIEN HO; DIEGO INDUSTRIAL, CO. LTD.; LATIN IMPORT SRL, S.A.; CHECKO NEPOMUCENO; CURAUCO FREEZONE DISTRIBUTORS, INC.; QUALITY KING DISTRIBUTORS, INC.; COUNCIL ROCK MEDICAL DISTRIBUTORS; DLR DISTRIBUTION, INC.; ALVARO GIRALDO; ALAN COHEN; GLOBAL MARKETING CENTER; DAVID MINSKY; TOPS GENERAL MERCHANDISING; and JOHN DOES 1-50,

Defendants.

---

04 Civ. 2820 (DRH)

**THIRD AMENDED COMPLAINT**

Plaintiff Demands Trial by Jury

Plaintiff, The Procter & Gamble Company, by its attorneys, Kramer Levin Naftalis & Frankel LLP and Fulbright & Jaworski L.L.P., for its complaint against defendants, Xetal, Inc. doing business as APO Health, Inc. and Universal Medical Distributors, Inc. (collectively, "APO"), Dr. Jan Stahl ("Stahl"), ATM, Inc. ("ATM"),

PLAINTIFF'S EXHIBIT A

Trans Customs Services ("TCS"), Brothers Trading Co. doing business as Victory Wholesale Grocers also known as SK-Tors (collectively, "Victory"), Gary Gruenberg, Sylvie a/k/a Sylvia Gruenberg (together with Gary Gruenberg, the "Gruenbergs"), AMG Worldwide, Inc. ("AMG Worldwide"), AMG Communications Corp. ("AMG Communications" and together with AMG Worldwide, "AMG"); Fred Harrick ("Harrick"), Paul Chou, a/k/a Chou Chien Ho ("Chou"), Diego Industrial Co. Ltd. ("Diego"), Latin Import SRL, S.A. ("Latin Import"), Checko Nepomuceno ("Checko"); Curacao Freezone Distributors, Inc. ("Curacao Freezone"), Quality King Distributors, Inc. ("Quality King"), Council Rock Medical Distributors ("Council Rock"), DLR Distribution, Inc. ("DLR"), Alvaro Giraldo ("Giraldo"), David Minsky ("Minsky"), Tops General Merchandising ("Tops"), Alan Cohen ("Cohen"), Global Marketing Center ("Global"), and John Does 1-50, alleges as follows:

## The Nature of the Action

1. Plaintiff The Procter & Gamble Company ("Procter & Gamble") is a distributor of world-renowned high-quality consumer products sold under various registered trademarks, including "Pantene" and "Head & Shoulders." These trademarks have become extremely valuable as a result of Procter & Gamble's substantial marketing efforts and the tremendous public acceptance of products bearing those distinctive marks. For example, since 1999, Procter & Gamble has spent more than $980 million dollars advertising Pantene and has achieved sales of that product well in excess of $3 billion dollars. Similarly, during that same period, Procter & Gamble has spent more than $286



KL3:2431990.1

million dollars advertising Head & Shoulders and has achieved sales of that product well in excess of $1 billion dollars.

2. Defendants Harrick, the Gruenbergs, ATM, Latin Import, AMG, Chou and Diego knowingly manufactured hundreds of thousands of bottles of counterfeit Pantene and Head & Shoulders hair care products and sold it to defendants APO, Stahl, Global, Cohen and Giraldo in the United States. Defendants Checko and Curacao Freezone arranged for the transport of some of the counterfeit shampoo to the United States and defendant TCS arranged for the distribution of some of the counterfeit shampoo within the United States. The remaining defendants, Victory, Quality King, DLR, Council Rock, Tops and Minsky, all purchased the counterfeit shampoo and resold the shampoo to other distributors and/or retail stores, including nationwide retail pharmacy chains with stores in New York. These sales have irreparably harmed Procter & Gamble's reputation and have defrauded the purchasing public.

3. This action seeks injunctive and monetary relief, including treble damages, costs, attorneys fees, profits and pre-judgment and post-judgment interest, for false descriptions and false designations of origin in commerce in violation of Section 43 of the Lanham Trademark Act (15 U.S.C. § 1125) and New York General Business Law Section 349, for trademark infringement in violation of Section 32 of the Lanham Trademark Act (15 U.S.C. § 1114), for dilution of mark in violation of Section 43 of the Lanham Trademark Act (15 U.S.C. § 1125) and New York General Business Law

Section 360-l, and for unjust enrichment and unfair competition in violation of New York common law.

Jurisdiction and Venue

4. This Court has jurisdiction over this action pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 1338 and 1367 and general principles of ancillary and pendent jurisdiction.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

6. Plaintiff Procter & Gamble is a corporation organized under the laws of the State of Ohio. Its principal place of business is in Cincinnati, Ohio.

7. Defendants Gary and Sylvie a/k/a Sylvia Gruenberg reside together as husband and wife in Florida. Personal jurisdiction is proper over them pursuant to Fed. R. Civ. P. Rule 4(k)(1) and N.Y.C.P.L.R. § 302.

8. Defendant Gary Gruenberg is an officer and the owner of defendant AMG Worldwide. Defendants AMG Worldwide and the Gruenbergs share the same address in Florida. Personal jurisdiction is proper over AMG Worldwide pursuant to Fed. R. Civ. P. Rule 4(k)(1) and N.Y.C.P.L.R. § 302.

9. Defendant Sylvie a/k/a Sylvia Gruenberg is the sole officer of Defendant AMG Communications and Defendant Gary Gruenberg is the company's registered agent. Personal jurisdiction is proper over AMG Communications pursuant to Fed. R. Civ. P. Rule 4(k)(1) and N.Y.C.P.L.R. § 302.

10. The Gruenbergs are the moving, active and conscious force behind AMG's counterfeiting activities.

11. Defendant Stahl is an officer of defendant APO. Personal jurisdiction is proper over him pursuant to Fed. R. Civ. P. Rule 4(k)(1) and N.Y.C.P.L.R. §§ 301 and 302.

12. Defendant APO is headquartered in Oceanside, New York. Personal jurisdiction is proper over APO pursuant to Fed. R. Civ. P. Rule 4(k)(1) and N.Y.C.P.L.R. §§ 301 and 302.

13. Stahl is the moving, active and conscious force behind APO's counterfeiting activities.

14. Defendant TCS maintains a place of business in Miami, Florida. Personal jurisdiction is proper over TCS pursuant to Fed. R. Civ. P. Rule 4(k)(1) and N.Y.C.P.L.R. § 302.

15. Defendant Victory's principal place of business is in Springboro, Ohio. Personal jurisdiction is proper over Victory pursuant to Fed. R. Civ. P. Rule 4(k)(1) and N.Y.C.P.L.R. §§ 301 and/or 302.

16. Upon information and belief, Defendant Chou resides in Taiwan. Chou is an officer of defendant Diego. His counterfeiting activities have had a substantial impact on interstate commerce. Personal jurisdiction is proper over Chou pursuant to Fed. R. Civ. P. Rule 4(k)(1) and N.Y.C.P.L.R. § 302.

17. Diego's principal place of business is in Taiwan. Its counterfeiting activities have had a substantial impact on interstate commerce. Personal jurisdiction is proper over Diego pursuant to Fed. R. Civ. P. Rule 4(k)(1) and N.Y.C.P.L.R. § 302.

18. Chou is the moving, active and conscious force behind Diego's counterfeiting activities.

19. Defendant Harrick resides in Panama City, Panama. His counterfeiting activities have had a substantial impact on interstate commerce. Personal jurisdiction is proper over Harrick pursuant to Fed. R. Civ. P. Rule 4(k)(1) and N.Y.C.P.L.R. § 302.

20. Upon information and belief, defendant ATM's principal place of business is in Panama. Its counterfeiting activities have had a substantial impact on interstate commerce. Personal jurisdiction is proper over ATM pursuant to Fed. R. Civ. P. Rule 4(k)(1) and (2) and N.Y.C.P.L.R. § 302.

21. Defendant Latin Import is a registered Panamanian corporation with a place of business in Panama City. Its counterfeiting activities have had a substantial impact on interstate commerce. Personal jurisdiction is proper over Latin Import pursuant to Fed. R. Civ. P. Rule 4(k)(1) and N.Y.C.P.L.R. § 302.

22. Harrick is an officer of both ATM and Latin Import and is the moving, active and conscious force behind both ATM's and Latin Import's counterfeiting activities.

23. Defendant Checko resides in Curacao. His counterfeiting activities have had a substantial impact on interstate commerce. Checko is the director of defendant Curacao Freezone. Personal jurisdiction is proper over Checko pursuant to Fed. R. Civ. P. Rule 4(k)(1) and N.Y.C.P.L.R. § 302.

24. Upon information and belief, defendant Curacao Freezone's principal place of business is in Curacao. Curacao Freezone's counterfeiting activities have had a substantial impact on interstate commerce. Personal jurisdiction is proper over Curacao Freezone pursuant to Fed. R. Civ. P. Rule 4(k)(1) and N.Y.C.P.L.R. § 302.

25. Checko is the moving, active and conscious force behind Curacao Freezone's counterfeiting activities.

26. Defendant Quality King is headquartered in Ronkonkoma, New York. Personal jurisdiction is proper over Quality King pursuant to Fed. R. Civ. P. Rule 4(k)(1) and N.Y.C.P.L.R. §§ 301 and 302.

27. Defendant Council Rock is headquartered in Florida. Personal jurisdiction is proper over Council Rock pursuant to Fed. R. Civ. P. Rule 4(k)(1) and N.Y.C.P.L.R. § 302.

28. Defendant DLR is headquartered in Florida. Personal jurisdiction is proper over DLR pursuant to Fed. R. Civ. P. Rule 4(k)(1) and N.Y.C.P.L.R. § 302.

29. Upon information and belief, defendant Giraldo resides in Florida and in Queens, New York. Personal jurisdiction is proper over Giraldo pursuant to Fed. R. Civ. P. Rule 4(k)(1) and N.Y.C.P.L.R. §§ 301 and/or 302.

30. Defendant Minsky is an officer of defendant Tops. Personal jurisdiction is proper over him pursuant to Fed. R. Civ. P. Rule 4(k)(1) and N.Y.C.P.L.R. §§ 301 and 302.

31. Defendant Tops is headquartered in Brooklyn, New York. Personal jurisdiction is proper over Tops pursuant to Fed. R. Civ. P. Rule 4(k)(1) and N.Y.C.P.L.R. §§ 301 and 302.

32. Minsky is the moving, active and conscious force behind Tops's counterfeiting activities.

33. Defendant Cohen is an officer of defendant Global. Personal jurisdiction is proper over him pursuant to Fed. R. Civ. P. Rule 4(k)(1) and N.Y.C.P.L.R. § 302.

34. Defendant Global is headquartered in Florida. Personal jurisdiction is proper over Global pursuant to Fed. R. Civ. P. Rule 4(k)(1) and N.Y.C.P.L.R. § 302.

35. Cohen is the moving, active and conscious force behind Global's counterfeiting activities.

36. Defendants John Does 1-50 are individuals and business entities, whose identities are presently unknown to Procter & Gamble, who participated in the

manufacture, sale or distribution of the counterfeit Pantene and/or Head & Shoulders. To the extent their identities become known to Procter & Gamble, those defendants will be joined and the acts in which they engaged will be pleaded in an amended complaint.

## The Facts

### Procter & Gamble's World-Renowned Trademarks

37. Procter & Gamble is the owner of various incontestable federal trademark registrations for the name "Pantene" and for certain aspects of the Pantene trade dress Those trademarks include Registration No. 1,484,935 registered in the Principal Register on April 19, 1988, Registration No. 638,163 registered in the Principal Register on December 4, 1956 and renewed on December 4, 1976 and then again in 1996, Registration No. 1,005,694 registered in the Principal Register on March 4, 1975 and renewed on March 4, 1995, Registration No. 1,491,844 registered in the Principal Register on June 14, 1988 and Registration No. 2,207,500 registered in the Principal Register on December 1, 1998. Procter & Gamble also has a pending application for the name "Pantene Sheer Volume."

38. Procter & Gamble is also the owner of various federal trademark registrations for certain aspects of the Pantene Pro-V trade dress. Those registrations include Registration No. 2,757,654 registered in the Principal Register on August 26, 2003 and Registration No. 2,447,036 registered in the Principal Register on April 24, 2001.

39. Procter & Gamble is also the owner of various incontestable federal trademark registrations for the name "Pro-V." Those registrations include Registration No. 1,822,234 registered in the Principal Register on February 22, 1994 and renewed on April 6, 2004, and Registration No. 1,719,290 registered in the Principal Register on September 22, 1992 and renewed in 2002. Procter & Gamble is also the owner of two additional federal trademark registrations for certain aspects of the "Pro-V" trade dress. Those include Registration No. 2,447,037 registered in the Principal Register on April 24, 2001 and Registration No. 2,796,187 registered in the Principal Register on December 16, 2003.

40. In addition, Procter & Gamble owns trademark registrations for the name "Pantene" in the Netherland Antilles, which includes Curacao.

41. Procter & Gamble is the owner of various incontestable federal trademark registrations for the name "Head & Shoulders." Those trademarks include Registration No. 729,556 registered in the Principal Register on April 3, 1962 and renewed on April 3, 1982 and then again in 2002, and Registration No. 1,653,440 registered in the Principal Register on August 13, 1991 and renewed in 2001. Procter & Gamble is also the owner of Registration No. 2,791,735 registered in the Principal Register on December 9, 2003, which is a federal trademark registration for certain aspects of the "Head & Shoulders" trade dress.

42. In addition, Procter & Gamble also owns trademark registrations for the name "Head & Shoulders in the Netherland Antilles, which includes Curacao.

43. Procter & Gamble has spent and continues to spend large sums of money marketing and selling in interstate commerce Pantene and Head & Shoulders shampoo packaged in high-quality bottles bearing its trademarks and trade dress. As a result of the extensive advertising of Pantene and Head & Shoulders in connection with the Procter & Gamble trademarks, the widespread sale of Pantene and Head & Shoulders and the celebrity that the Pantene, Pantene Pro-V, Pro-V and Head & Shoulders trademarks and trade dress have achieved, shampoo bearing the Pantene, Pantene Pro-V, Pro-V and Head & Shoulders trademark and trade dress has been and is now recognized by the public and in the trade as originating from a single source, Procter & Gamble.

44. Pantene and Head & Shoulders bearing the Procter & Gamble registered trademarks and trade dress have come to be known by the purchasing public throughout the United States as shampoo of the highest quality. As a result, the Procter & Gamble trademarks and trade dress, and the goodwill associated with them, are of inestimable value to Procter & Gamble.

45. Procter & Gamble has engaged and continues to engage in interstate activities designed to promote Pantene and Head & Shoulders and the business and goodwill associated with each of its trademarks and to expand the use and reputation of its trademarks, trade dress, logos and property in the state of New York and throughout the United States.

The Manufacture, Sale and Distribution of the Counterfeit Pantene and Head & Shoulders Hair Care Products Through Harrick, the Gruenbergs, ATM, Latin Import, AMG, Chou, Diego, Checko and Curacao Freezone

46. Defendant Harrick and defendant Gary Gruenberg are brothers-in-law. Together, Harrick, through his companies, defendants ATM and Latin Import, and the Gruenbergs, through their companies, defendants AMG, retained defendant Diego and its principal, defendant Chou, to manufacture or cause to be manufactured counterfeit Pantene and Head & Shoulders hair products for sale and distribution throughout the world, including the United States. At the direction of defendants Harrick and the Gruenbergs, defendant Curacao Freezone and its principal, defendant Checko, knowingly shipped the counterfeit shampoo to the United States.

The Sale and Distribution of the Counterfeit Pantene and Head & Shoulders Hair Products Through Defendants APO, Stahl, TCS, Victory, Quality King, Council Rock and DLR

47. In multiple transactions beginning in July 2003 and ending in March 2004, APO and Stahl purchased hundreds of thousands of bottles of counterfeit Pantene and Head & Shoulders from defendants Harrick, the Gruenbergs, ATM, Latin Import and AMG. Chou and Diego knowingly manufactured the counterfeit shampoo that was sold to APO, and Checko and Curacao Freezone knowingly shipped the shampoo to the United States for distribution to APO. APO distributed the counterfeit shampoo in the United States through defendant TCS.

48. APO and Stahl sold the counterfeit shampoo to defendants Victory, Quality King, DLR and Council Rock.

49. Quality King introduced Stahl and APO to Harrick and the Gruenbergs. Upon information and belief, Quality King purchased the Pantene and Head & Shoulders hair care products indirectly from APO and Stahl rather than directly from Harrick and the Gruenbergs because it knew that Harrick and the Gruenbergs were selling counterfeit products and it wanted to minimize its potential exposure by purchasing those counterfeit products through an intermediary.

50. Victory, Quality King, Council Rock and DLR all resold the counterfeit shampoo they had purchased from APO and Stahl to others. For example, Victory sold some of the counterfeit shampoo to Rite Aid.

51. Based on the foregoing, the condition of the packaging, the poor quality of the shampoo and the pricing, it is likely that APO, Stahl, TCS, Victory, Quality King, DLR and Council Rock either knew that the products were counterfeit or, at a minimum, were willfully blind to the facts and failed to make diligent inquiry.

The Sale and Distribution of the Counterfeit
Pantene and Head & Shoulders Hair Products
Through Defendants Global, Cohen, Tops and Minsky

52. Defendants Global and Cohen purchased tens of thousands of bottles of counterfeit Pantene and Head & Shoulders from defendants Harrick, the Gruenbergs, ATM, Latin Import and AMG, and sold it to defendants Tops and Minsky. Tops and Minsky, in turn, resold the counterfeit shampoo to dozens of retail stores located throughout New York City. Chou and Diego knowingly manufactured the counterfeit

shampoo, and Checko and Curacao Freezone knowingly shipped the shampoo to the United States for distribution to Global.

53. Based on the condition of the packaging, the poor quality of the shampoo and the pricing, it is likely that Global, Cohen, Tops and Minsky either knew that the products were counterfeit or, at a minimum, were willfully blind to the facts and failed to make diligent inquiry.

The Sale and Distribution of the Counterfeit Pantene and
<u>Head & Shoulders Hair Products Through Defendant Giraldo</u>

54. Defendant Giraldo purchased thousands of bottles of counterfeit Pantene and Head & Shoulders from defendants Harrick, the Gruenbergs, ATM, Latin Import and AMG. Chou and Diego knowingly manufactured that counterfeit shampoo.

55. Based on the condition of the packaging, the poor quality of the shampoo and the pricing, it is likely Giraldo knew that the products were counterfeit or, at a minimum, was willfully blind to the facts and failed to make diligent inquiry.

First Cause of Action
<u>Federal Trademark Infringement</u>

56. Procter & Gamble repeats and realleges paragraphs 1 through 58 as if fully set forth herein.

57. In violation of 15 U.S.C. § 1114(1)(a), defendants used in commerce, without Procter & Gamble's consent, either a reproduction, counterfeit, copy or colorable imitation of Procter & Gamble's registered mark in connection with the sale,

offering for sale, distribution, or advertising of counterfeit Pantene and/or Head & Shoulders or in connection with which such use that is likely to cause confusion, or to cause mistake or to deceive.

58. Procter & Gamble has been and continues to be damaged by defendants' above-stated activities and conduct. The defendants have profited thereby and, unless enjoined, Procter & Gamble's business, goodwill and reputation will suffer irreparable injury, which cannot be adequately calculated or compensated for solely by money damages.

Second Cause of Action
Federal Trademark Infringement

59. Procter & Gamble repeats and realleges paragraph 1 through 61 as if fully set forth herein.

60. In violation of 15 U.S.C. § 1114(1)(b), some or all of the defendants reproduced, counterfeited, copied or colorably imitated a registered mark belonging to Procter & Gamble and applied such reproduction, counterfeit, copy or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the offering for sale, distribution or advertising of counterfeit Pantene and/or Head & Shoulders on or in connection with such use that is likely to cause confusion, to cause mistake or to deceive.

61. Procter & Gamble has been and continues to be damaged by defendants' above-stated activities and conduct. Defendants have profited thereby and,

unless enjoined, Procter & Gamble's business, goodwill and reputation will suffer irreparable injury, which cannot be adequately calculated or compensated for solely by money damages.

Third Cause of Action
Federal False Description and False Designation of Origin In Commerce

62. Procter & Gamble repeats and realleges paragraphs 1 through 64 as if fully set forth herein.

63. In violation of 15 U.S.C. § 1125(a)(1)(A), defendants, in connection with the counterfeit Procter & Gamble products, used in commerce a word, term, name, symbol or device, or any combination thereof, or a false designation of origin, false or misleading description of fact or false or misleading representation of fact, which was likely to cause confusion or to cause mistake, or to deceive as to the approval of defendants' goods by Procter & Gamble.

64. Procter & Gamble has been and continues to be damaged by defendants' above-stated activities and conduct. Defendants have profited thereby and, unless enjoined, Procter & Gamble's business, goodwill and reputation will suffer irreparable injury, which cannot be adequately calculated or compensated for solely by money damages.

Fourth Cause of Action
Federal False Advertising

65. Procter & Gamble repeats and realleges paragraphs 1 through 67 as if fully set forth herein.

66. In violation of 15 U.S.C. § 1125(a)(1)(B), some or all of the defendants, in connection with the sale of the counterfeit Procter & Gamble products, used a word, term, name, symbol, or device or any combination thereof, or a false designation of origin, false or misleading description of fact or false or misleading representation of fact, which in commercial advertising or promotion, misrepresented the nature, characteristics, qualities or geographic origin of the counterfeit Procter & Gamble products.

67. Procter & Gamble has been and continues to be damaged by defendants' above-stated activities and conduct. Defendants have profited thereby and, unless enjoined, Procter & Gamble's business, goodwill and reputation will suffer irreparable injury, which cannot be adequately calculated or compensated for solely by money damages.

Fifth Cause of Action
Federal Dilution of Mark

68. Procter & Gamble repeats and realleges paragraphs 1 through 70 as if fully set forth herein.

69. The Pantene, Pantene Pro-V, Pro-V and Head & Shoulders trademarks and trade dress are both famous and distinctive within the meaning of 15 U.S.C. § 1125(c).

70. Defendants have sold and are continuing to sell counterfeit products bearing the Pantene, Pantene Pro-V, Pro-V and/or Head & Shoulders trademarks and trade dress after such trademarks and trade dress became famous.

71. By selling these counterfeit products, defendants have diluted and are diluting the distinctive quality of a mark or trade name owned by Procter & Gamble in violation of 15 U.S.C. § 1125(c).

72. Procter & Gamble has been and continues to be damaged by defendants' above-stated activities and conduct. Defendants have profited thereby and, unless enjoined, Procter & Gamble's business, goodwill and reputation will suffer irreparable injury, which cannot be adequately calculated or compensated for solely by money damages.

Sixth Cause of Action
New York Dilution of Mark and Injury to Business Reputation

73. Procter & Gamble repeats and realleges paragraphs 1 through 75 as if fully set forth herein.

74. The Pantene, Pantene Pro-V, Pro-V and Head & Shoulders trademarks and trade dress are distinctive within the meaning of New York General Business Law § 360-l.

75. By selling low-quality counterfeit products bearing the Pantene, Pantene Pro-V, Pro-V and/or Head & Shoulders trademarks and trade dress, defendants have injured and are continuing to injure Procter & Gamble's business reputation and/or defendants have diluted and are continuing to dilute the distinctive quality of a mark or trade name owned by Procter & Gamble, in violation of New York General Business Law § 360-l.

76. Procter & Gamble has been and continues to be damaged by defendants' above-stated activities and conduct. Defendants have profited thereby and, unless enjoined, Procter & Gamble's business, goodwill and reputation will suffer irreparable injury, which cannot be adequately calculated or compensated for solely by money damages.

Seventh Cause of Action
<u>New York Deceptive Business Practices</u>

77. Procter & Gamble repeats and realleges paragraphs 1 through 79 as if fully set forth herein.

78. In violation of New York General Business Law § 349, defendants are selling, offering for sale and/or distributing low quality counterfeit products unlawfully bearing the Pantene, Pantene Pro-V, Pro-V and/or Head & Shoulders trademarks.

79. Procter & Gamble has been and continues to be damaged by defendants' above-stated unlawful and deceptive business activities and conduct.

Defendants have profited thereby and, unless enjoined, Procter & Gamble's business, goodwill and reputation will suffer irreparable injury, which cannot be adequately calculated or compensated for solely by money damages.

Eighth Cause of Action
<u>Common Law Unfair Competition</u>

80. Procter & Gamble repeats and realleges paragraphs 1 through 82 as if fully set forth herein.

81. In violation of the common law of the state of New York, defendants have unfairly competed with Procter & Gamble by selling the counterfeit products.

82. Procter & Gamble has been and continues to be damaged by defendants' above-stated activities and conduct. Defendants have profited thereby and, unless enjoined, Procter & Gamble's business, goodwill and reputation will suffer irreparable injury, which cannot be adequately calculated or compensated for solely by money damages.

Ninth Cause of Action
<u>Common Law Unjust Enrichment</u>

83. Procter & Gamble repeats and realleges paragraphs 1 through 85 as if fully set forth herein.

84. By selling the counterfeit products bearing Procter & Gamble's valuable trademarks, defendants have been unjustly enriched at Procter & Gamble's expense in violation of New York common law.

85. Procter & Gamble has been and continues to be damaged by defendants' above-stated activities and conduct. Defendants have profited thereby and, unless enjoined, Procter & Gamble's business, goodwill and reputation will suffer irreparable injury, which cannot be adequately calculated or compensated for solely by money damages.

## Relief Sought

Wherefore, Procter & Gamble demands judgment against defendants as follows:

(a) that preliminary and permanent injunctions be issued enjoining defendants and their subsidiaries, parents, affiliates, agents, servants, employees, directors, officers and attorneys and those persons in active concert or participation with them:

(i) from using any of the Pantene, Pantene Pro-V, Pro-V or Head & Shoulders trademarks or any marks similar thereto in connection with the sale of any unauthorized goods or the rendering of any unauthorized services;

(ii) from using any logo, trade name or trademark similar to any of the Pantene, Pantene Pro-V, Pro-V or Head & Shoulders trademarks which may be calculated to falsely represent or which has the effect of falsely representing that the services or products of defendants or of third

parties are sponsored by, authorized by or in any way associated with Procter & Gamble;

(iii) from infringing any of the Pantene, Pantene Pro-V, Pro-V or Head & Shoulders registered trademarks;

(iv) from otherwise unfairly competing with Procter & Gamble in the sale, offering for sale or distribution of Pantene or Head & Shoulders;

(v) from falsely representing themselves as being connected with Procter & Gamble or sponsored by or associated with Procter & Gamble or engaging in any act which is likely to falsely cause the trade, retailers and/or members of the purchasing public to believe that defendants are associated with Procter & Gamble;

(vi) from using any reproduction, counterfeit, copy, or colorable imitation of any of the Pantene, Pantene Pro-V, Pro-V or Head & Shoulders trademarks in connection with the publicity, promotion, sale, or advertising of counterfeit Pantene or Head & Shoulders sold by defendants bearing a copy or colorable imitation of any of the Pantene, Pantene Pro-V, Pro-V or Head & Shoulders trademarks;

(vii) from affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation including words or other symbols tending to falsely describe or represent such goods as

being Pantene or Head & Shoulders and from offering such goods in commerce;

(viii) from diluting the Pantene, Pantene Pro-V, Pro-V or Head & Shoulders trademarks;

(ix) from destroying any records documenting the manufacture, sale or receipt of any counterfeit Pantene or Head & Shoulders; and

(x) from assisting, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (i) through (ix) above; and

(b) ordering that, within thirty days after the entry and service of an injunction, each defendant serve and file a written report under oath setting forth in detail the manner and form in which it has complied with the injunction; and

(c) ordering that all infringing material be seized, impounded and destroyed; and

(d) awarding to Procter & Gamble from some or all of the defendants punitive damages in an amount to be ascertained at trial, but in no event less than $10 million; and

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE PROCTER & GAMBLE COMPANY

Plaintiff

-v- 04 Civ. No. 2820 (DRH)

XETAL, INC., d/b/a
APO Health, Inc., et al.

Defendants

ALCOA, INC. and
REYNOLDS METALS COMPANY

Plaintiffs

-v- 04 Civ. No. 1225 (DRH)

ATM, INC.; LATIN IMPORT SRL, S.C.,
a/k/a LATIN IMPORT PANAMA, S.A.,
XETAL, INC. d/b/a APO HEALTH, INC.
and UNIVERSAL MEDICAL DISTRIBUTORS,
INC., et al.

Defendants

VIDEOTAPED DEPOSITION OF GARY GRUENBERG

January 19, 2005

Fort Lauderdale, Florida

ELLEN GRAUER COURT REPORTING CO., LLC.
133 East 58th Street, Suite 1201
New York, New York
212-750-6434
Ref: 76193B

PLAINTIFF'S EXHIBIT
B

A. That was it.
Q. How about Herman Donnenfeld?
A. I didn't sell any hair care products to Herman Donnenfeld.
Q. So the only -- is there anyone else who ATM or Fred Harrick sold hair care products to you, that you know about?
A. No. Just the two companies.
Q. As we sit here today, do you know where any quantities of Procter & Gamble hair care products that were sold through ATM are today? In other words, are there some in a storehouse, or storage facility, or with a customer or customer's customer that you know about?
A. No, no --
Q. So you don't know of any products today --
A. No --
Q. -- sitting anywhere.
A. No.
Q. If, after our deposition today, you should occur to you [sic] that you know of a quantity somewhere, I would ask you to tell your attorney that information, with the hope that he would convey it to me. Because not only are the

products counterfeit, but some of them are contaminated, and could hurt someone who has a weakened immune system. So we want to make every effort we can to try to see that they stay out of circulation.

A. Okay.

Q. The other product you mentioned that you sold was aluminum foil. Reynolds aluminum foil; correct?

A. That's correct.

Q. Who purchased Reynolds aluminum foil, through you, or from Fred Harrick and ATM and Latin Imports? Who do you know of that got that product?

A. Well, my customer was APO.

Q. Who else?

A. That's ...

Q. How about Global? Alan Cohen at Global.

A. Nothing.

Q. He didn't buy any of the foil.

A. He put a deposit on it, but he backed out.

Q. And who bought that foil when it came in?